CONNAWAY v WELDED CONSTRUCTION COMPANY

Docket No. 201559. Submitted June 3, 1998, at Grand Rapids. Decided December 15, 1998, at 9:00 A.M.

Deborah L. Connaway sustained a work-related knee injury in Michigan for which she received worker's compensation benefits for six months while she did not work. Shortly after resuming work in New York, she sustained another work-related injury to the same knee. Connaway sought the reinstatement of Michigan worker's compensation benefits. The employer and insurer who had been liable for Michigan worker's compensation benefits, Welded Construction Company, and Hartford Accident and Indemnity Company, respectively, contested Connaway's entitlement to reinstated benefits. A worker's compensation magistrate, relying on the successive injury rule and the testimony of three physicians who examined Connaway after the second knee injury, decided to reinstate Michigan worker's compensation benefits after finding that the second injury had not aggravated Connaway's preexisting condition and therefore did not constitute a new injury for purposes of worker's compensation. The Worker's Compensation Appellate Commission reversed the magistrate's decision after determining that the magistrate erred in finding that the second injury had not aggravated Connaway's preexisting condition. Connaway appealed to the Court of Appeals by leave granted.

The Court of Appeals held:

1. The commission, in reversing the magistrate's decision, carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not misapprehend or grossly misapply the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the decision of the magistrate.

2. Upon examination of the reasoning and analysis of the decisions of the magistrate and the commission, the evidence considered or ignored in those decisions, the care taken, and the nature of the issues involved, it can be concluded that the commission reviewed the magistrate's findings of fact in a manner consistent with the concept of administrative appellate review that is less than de novo.

3. The rule in successive injury cases is to place full liability on the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability . If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. However, if, as in this case, the second incident contribute s independen tly to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contribute d the major part to the final condition.

Affirmed.

1. WORKER'S COMPENSATION — MAGISTRATES — APPELLATE COMMISSION — FIND-INGS OF FACT.

Findings of fact by a worker's compensation magistrate, on review by the Worker's Compensation Appellate Commission, are conclusive if they were supported by competent, material, and substantial evidence on the whole record; such evidence is that which a reasonable mind would accept as adequate, and, while such evidence must be more than a scintilla, it may be less than a preponderance (MCL 418.861a[3]; MSA 17.237[861a][3]).

2. WORKER'S COMPENSATION — APPELLATE COMMISSION — JUDICIAL REVIEW.

A decision by the Worker's Compensation Appellate Commission to reverse a decision by a worker's compensation magistrate should, on judicial review, be affirmed if it appears that the commission carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not misapprehend or grossly misapply the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the decision of the magistrate (Const 1963, art 6, § 28; MCL 418.861a[14]; MSA 17.237[861a][14]).

3. WORKER'S COMPENSATION — MAGISTRATES — APPELLATE COMMISSION — FIND-INGS OF FACT.

A court in deciding whether the Worker's Compensation Appellate Commission has reviewed a worker's compensation magistrate's findings of fact in a manner consistent with the concept of administrative appellate review that is less than review de novo examines the reasoning and analysis of the decisions of the magistrate and the commission, the evidence considered or ignored in those decisions, the care taken, and the nature of the issues involved, particularly when there are issues of credibility to be determined by the magistrate; unless it is manifest that the commission exceeded its

reviewing power, the court should ordinarily defer to the judgment of the commission (Const 1963, art 6, § 28; MCL 418.861a[14]; MSA 17.237[861a][14]).

4. WORKER'S COMPENSATION — SUCCESSIVE INJURY RULE.

The rule in successive injury cases is to place full liability on the carrier covering the risk at the time of the most recent injury that bears a causal relation to the injury; if the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second; on the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition.

*Martha M. Glaser*, for the plaintiff.

*Thomas J. Veum*, for the defendants.

Before: MACKENZIE, P.J., and WHITBECK and G. S. ALLEN, JR.* , JJ.

WHITBECK, J. Plaintiff Deborah L. Connaway appeals by leave granted from a decision of the Worker's Compensation Appellate Commission (WCAC) that denied Michigan benefits to her on the basis that a successive injury in New York aggravated her prior, Michigan-based condition. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

A. THE NOVEMBER 2, 1989, INJURY

Plaintiff is a resident of Illinois. Defendant Welded Construction Company is engaged in pipeline construction in several states. Plaintiff's job as a "welder's helper" involved fairly heavy labor that took

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

place at outdoor construction sites. Welded Construction assigned plaintiff to a job in northern Michigan in November 1989. On the first day working on that job, plaintiff injured her right knee (the November 2, 1989, injury). She received Michigan worker's compensation benefits, and she was treated by an orthopedic surgeon in Illinois.

Dr. Raymond Coss, plaintiff's treating physician, performed arthroscopic surgery on plaintiff in February of 1990. Dr. Coss found that plaintiff had torn her anterior cruciate ligament and also had a problem with her patella or, in other words, her kneecap. After the surgery, plaintiff improved, although she was at risk of her knee buckling. Plaintiff went through rehabilitation and a "work hardening" program for six months after her surgery. Plaintiff was also prescribed a knee brace. In August of 1990, Dr. Coss thought that plaintiff "had achieved a maximum benefit from the work hardening" program and suggested "a trial of work." When asked what he meant by a "trial of work," the doctor explained that plaintiff could return to work and see if her knee held up:

> We had some tentative feelings about her return to work as a construction worker but felt that she had proceeded with her work hardening and therapy program to a point where she could be permitted to return understanding that she, in my opinion, would have some increased percentage chance of reinjury or intolerance to the work demands.

### B. THE SEPTEMBER 4, 1990, INJURY

Welded Construction then assigned plaintiff to work on a pipeline project in New York State. Plaintiff started working at that job site in mid-August of 1990. Plaintiff performed the same job as a welder's

helper that she did before she was injured. Plaintiff returned to work without restrictions. Plaintiff worked long days and long weeks, about ten hours a day and about six days a week. Plaintiff apparently wore her knee brace while she was working. She testified that she also carried an ice pack in her lunch box to be used on her knee. After working regularly for ten days to two weeks, on September 4, 1990, plaintiff's knee gave out when she turned suddenly (the September 4, 1990 injury). The injury occurred at the end of the work day. Plaintiff could not work the next day. Plaintiff returned home and has not worked since.

Plaintiff returned to see Dr. Coss in September of 1990. Dr. Coss testified that he felt plaintiff had "resprained" her knee. Plaintiff's knee brace was "continued," and her activities were "modified." Plaintiff was also "continued" on home exercises. Dr. Coss saw plaintiff at least through May of 1993. By October of 1990, Dr. Coss thought plaintiff's knee was "more stable . . . than at any previous time." It seems, however, that plaintiff's condition either plateaued or gradually deteriorated after that point. Dr. Coss thought that plaintiff was disabled from her job as a welder's helper. He thought plaintiff should be restricted from climbing, working on uneven terrain, and heavy lifting. When asked for the basis for his opinion that plaintiff was disabled, Dr. Coss testified:

> We know that the patient has had a significant cruciate ligament injury and we know that she has had at the time of her arthroscopy a grade three chondromalacia patella, and this coupled with the subjective performance of the knee would, in my opinion, disqualify her from heavy industry participation.

Dr. Coss related plaintiff's continuing disability to the November 2, 1989, injury. He was asked whether the knee condition for which he was then treating plaintiff was caused or aggravated by the November 2, 1989, injury. He answered:

> I think that the ligamentous injury was caused by the fall, I think that the chondromalacia was most likely exacerbated.

Regarding the September 4, 1990, injury, Dr. Coss did not seem to think that injury meaningfully affected plaintiff's pathology. He was asked what effect the September 4, 1990, injury had on plaintiff's underlying knee condition. He answered:

> One would have a difficult time perceiving any injury to have a beneficial effect on the knee. On the other hand, I was unable to determine any objective finding which delineated further harm to the knee.

On cross-examination it was brought out that plaintiff's condition when the doctor saw her in September of 1990, after the September 4, 1990, injury, was considerably different than when he saw her in August of 1990. The doctor said that plaintiff's condition "was certainly subjectively different." He explained that in September plaintiff was complaining of pain that she did not complain about in August and that plaintiff was complaining in September that she could not perform all the same activities she could in August.

Plaintiff was examined by Dr. Eugene Cisek in November of 1992. Dr. Cisek thought that plaintiff was disabled from heavy labor because of her knee condition. Dr. Cisek further testified that he thought that plaintiff's knee disability was a result of the

November 2, 1989, injury and that the September 4, 1990, injury had no permanent effect on plaintiff. Dr. Cisek testified:

> Yes, I did not feel that there was any permanent—permanency associated with the accident of 9/4/90, I felt that that particular accident represented an aggravation of her preexisting condition, which occurred as a result of the November, 1989 accident, namely the rupture of the anterior cruciate ligament and aggravation of patella chondromalacia.

The doctor testified that the September 4, 1990, injury "would result in a temporary aggravation of her preexisting condition." When asked on cross-examination about the fact that plaintiff had returned to work without restrictions and had worked her regular job for about two weeks before she was again injured, Dr. Cisek replied:

> Well, she had been working only a short time before this 9/4/90 injury, and there is no way in telling whether that knee would have continued to hold up for her with the type of pathology she had in her knee joint, given a longer period of stress on her knee.

The doctor then agreed, however, that the September 4, 1990, injury "did have some effect" on plaintiff. Dr. Cisek's view of the two injuries is summarized in a paragraph at the conclusion of his medical report, which was an exhibit to his deposition:

> APPORTIONMENT: I find no apportionment between her injuries of 9/4/90 and 11/2/89, as I find no permanent disability due to her trauma of 9/4/90. The 11/2/89 injury was the initiating factor resulting in ligamentous instability of her right knee. The accident of 9/4/90 was merely a temporary aggravation of her initial injury of 11/2/89.

The third doctor who examined plaintiff was Dr. Bert Korhonen, who examined her in May of 1993. Dr. Korhonen thought that plaintiff did not have a continuing problem with the ligaments in her knee. He thought that plaintiff's only problem was the patella problem, which was a congenital anomaly. Dr. Korhonen thought that the tear in plaintiff's ligament had healed. Dr. Korhonen would not have placed any restrictions on plaintiff's employment on the basis of the ligament injury. Dr. Korhonen further testified that it was his opinion that the September 4, 1990, injury did not result in damage or injury to plaintiff's anterior cruciate ligament.

### C. THE MAGISTRATE'S DECISION

Plaintiff received some sporadic benefits under the New York Worker's Compensation Act, but defendant Hartford Insurance Company disputed her entitlement to benefits in New York. Plaintiff filed a petition for reinstatement of her Michigan benefits as a result of the November 2, 1989, injury and a hearing was held before a magistrate, who thereafter issued a decision granting an open award of benefits pursuant to the Michigan Worker's Disability Compensation Act (WDCA). The magistrate found that plaintiff was disabled as a result of the November 2, 1989, injury. The magistrate found both plaintiff and the testimony of Drs. Coss and Cisek to be credible. Regarding the September 4, 1990, injury, the magistrate found that the injury did not aggravate plaintiff's underlying condition. The magistrate stated:

> Further, all three of the medical examiners who testified were of the opinion that the September, 1990 incident in New York did not aggravate plaintiff's underlying condition.

Further, the credible testimony of both doctors Coss and Cisek related Plaintiff's current disability to her 1989 injury at Welded Construction Company.

### D. THE WCAC DECISION

Welded Construction appealed to the WCAC. Welded Construction argued that Michigan did not have jurisdiction to award benefits to plaintiff because plaintiff was injured in New York, there was no contract of hire made in Michigan, and plaintiff was not a resident of Michigan. The WCAC viewed the question as "whether there is a continuing disability from a Michigan injury or a new and separate injury resulting from the work in New York." The WCAC reversed the magistrate's decision and found in its decision that the record did not support the magistrate's finding that plaintiff had a continuing disability from the Michigan injury.

The WCAC noted that after a six-month recovery period plaintiff returned to unrestricted work "on a trial basis." The WCAC further noted that plaintiff returned to the same job she had before she was injured in Michigan and that plaintiff was then injured on September 4, 1990, in New York. The WCAC disagreed with the magistrate's view of the evidence that the three medical witnesses did not think the incident in New York aggravated plaintiff's underlying condition. The WCAC quoted the testimony of Dr. Cisek to the effect that he did not feel there was permanency associated with the September 4, 1990, injury, but that he "felt that that particular accident represented an aggravation of her preexisting condition." The WCAC also quoted Dr. Coss' testimony about how plaintiff's condition was worse when he saw her in

September of 1990 than when he returned her to work in August of 1990.

The WCAC relied upon the rule of law that if an employee has a prior work-related disability and subsequent work makes it worse, there is a new date of injury. The WCAC thought it clear that the November 2, 1989, injury had "resolved" itself by August of 1990, when plaintiff was returned to work without restrictions. The WCAC viewed the September 4, 1990, injury as an "aggravation" that created a new injury date. The WCAC noted that the September 4, 1990, injury was described as an "aggravation" by the two doctors relied on by the magistrate. Because plaintiff's September 4, 1990, injury had no connection with Michigan, and constituted a new injury, the WCAC concluded that Michigan had no jurisdiction over plaintiff's claim.

### E. PLAINTIFF'S APPEAL

Plaintiff filed an application for leave to appeal with this Court, which this Court granted. Plaintiff now argues that the WCAC erred because the magistrate's decision was amply supported by the record and the WCAC's finding that plaintiff had fully recovered was not supported by any evidence in the record. Plaintiff argues that the WCAC took testimony of witnesses out of context and ignored their contrary testimony. Plaintiff argues that the September 4, 1990, injury was a natural consequence of her November 2, 1989, injury.

Welded Construction emphasizes that plaintiff returned to work without restrictions and worked for many long days before she was injured again. Welded Construction contends the evidence supported the

WCAC's decision. Welded Construction contends that the instant case is similar to a case in which an employee has successive injuries. In such cases, the employer at the time of the latter injury is liable.

## II. STANDARD OF REVIEW

### A. INTRODUCTION

Few subjects in Michigan jurisprudence have been so thoroughly explored—indeed one might even say dissected—as the endlessly intricate question of the appropriate standard of review in WDCA cases. Our purpose here is not to engage in yet another extended discussion of this subject but rather to state clearly our understanding of the appropriate standard at each level of review. We emphasize at the outset, therefore, that it is vitally important to recognize that there are, in fact, two levels of review, administrative review and judicial review, and that the standards of review at these two levels are distinctively, and understandably, different.

### B. ADMINISTRATIVE REVIEW

As stated by the Michigan Supreme Court in *Holden v Ford Motor Co*, 439 Mich 257, 260 & n 3; 484 NW2d 227 (1992), before the passage of 1985 PA 103, referees, also referred to as administrative law judges, conducted hearings in worker's compensation cases, with review de novo by the Worker's Compensation Appeal Board. 1985 PA 103 eliminated review de novo commencing October 1, 1986. *Holden, supra* at 261. Thereafter, on administrative review the newly created WCAC was to consider findings of fact by a worker's compensation magistrate conclusive if such findings of fact were supported by "competent, mate-

rial, and substantial evidence on the whole record."
MCL 418.861a(3);   MSA 17.237(861a)(3).

As the Court commented, "This substantial evidence standard provides for administrative appellate review more deferential to the hearing officer's decision than de novo review, but for more searching review by the WCAC than judicial review under the 'any evidence standard.' " *Holden, supra* at 261-262. The Court also traced the derivation of the 1985 PA 103 language:

> The House Substitute, which became Act 103, retained the "substantial evidence on the whole record" standard, but added definitions of "substantial evidence" and "whole record" taken from *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974), where this Court considered the meaning of "substantial evidence" in the context of judicial review of findings of fact by the Michigan Employment Relations Commission pursuant to the labor mediation act. The House Substitute also added language, again taken from *Detroit Symphony,* providing that the WCAC's review of a magistrate's decision should include both a "qualitative and a quantitative" analysis of the evidence to ensure a full, thorough, and fair review.
>
> *     *     *
>
> In apparent recognition of the difference between judicial appellate review of an administrative agency's decision, and administrative appellate review by the WCAC of a magistrate's decision, the Legislature did not enact, as part of the substantial evidence standard for workers' compensation administrative appellate review purposes, the *[Detroit Symphony]* language that review by the WCAC is to be "undertaken with considerable sensitivity" to provide "due deference to administrative expertise" and to avoid displacing a "choice between two reasonably differing views." *[Holden, supra* at 264-265, 267.]

There have been, of course, differing views of the scope of administrative review as set out in 1985 PA 103 and interpreted in *Holden, supra*.[1] This case, however, raises a particularly troubling issue, deriving from the Michigan Supreme Court's decision in *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507, 538; 563 NW2d 214 (1997). There the Court stated:

> If the magistrate's decision is reasonably supported in the record by *any* competent, material, and substantial evidence, then it is conclusive and the WCAC must affirm. If it does not, it is exceeding the scope of its reviewing power and impermissibly substituting its judgment for the magistrate's. In reviewing the magistrate's decision, the WCAC must do so with sensitivity and deference toward the findings and conclusions of the magistrate in its assessment of the record. If in its review the WCAC finds that the magistrate did not rely on competent evidence, it must carefully detail its findings of fact and the reasons for its findings grounded in the record. [*Id.* (emphasis supplied).][2]

See also *Layman v Newkirk Electric Associates, Inc*, 458 Mich 494, 507; 581 NW2d 244 (1998); *Angel v Jahm, Inc*, 232 Mich App 340, 343-344; 591 NW2d 64 (1998), citing the above language.

---

[1] See for example *Layman v Newkirk Electric Associates, Inc*, 458 Mich 494; 581 NW2d 244 (1998), in which the majority held that the WCAC exceeded its authority "when it made impermissible findings of fact in the absence of findings by the magistrate," *id.* at 507, while the dissent argued that this holding was inconsistent with, and marked a clear retreat from, the Court's recent recognition of the WCAC's authority to find facts.

[2] Other than to note it in passing, we do not comment on the rather obvious discrepancy between the sentence in *Goff* requiring the WCAC to review a magistrate's decision with "sensitivity and deference toward the findings and conclusions of the magistrate" and the sentence in *Holden* noting that the Legislature had *not* adopted language from *Detroit Symphony* providing that review by the WCAC is to be "undertaken with considerable sensitivity" to provide "due deference to administrative expertise" and to avoid displacing a "choice between two reasonably differing views." See *Holden, supra* at 267.

The "any," prior to the phrase "competent, material, and substantial evidence" in the above paragraph, is more than a little troublesome. Taken literally, it could be construed to mean that if there is *any evidence at all* in a magistrate's decision that can be considered to be competent, material, and substantial, then the WCAC must always defer to that decision. We do not believe that the Court intended to place such an enormously binding constraint upon the WCAC's administrative review, for a number of reasons. First, we note that in *Goff, supra* at 512-513, the Court engaged in a discussion of the *Holden* standards for judicial review, but then again commented on the standard for administrative review:

> However, where a party claims that the WCAC has exceeded its power by reversing the magistrate, meaningful review must begin with the magistrate's decision, *because if competent, material, and substantial evidence based on the whole record supports the magistrate's decision,* the WCAC need go no further. If it does, the WCAC is exceeding its authority. [Emphasis supplied.]

We view the fact that the Court did not insert the word "any" before the phrase "competent, material and substantial evidence" in the first sentence to be significant. Had the Court meant to affirm an interpretation that if any evidence *at all*, if it could be found to be competent, material, and substantial, was sufficient to require the WCAC to uphold a magistrate's decision, here was certainly the place to say it. Quite obviously, the Court did not make such a statement.[3]

---

[3] See also *Civil Service Comm v Dep't of Labor,* 424 Mich 571, 622; 384 NW2d 728 (1986), modified on other grounds 425 Mich 1201 (1986), in which the Court stated that a magistrate's findings of fact can be reversed on appeal "only if there is not substantial evidence on the whole record to

Secondly, such an interpretation flies squarely in the face of the language in *Holden, supra*. There, the Court referred to a "more searching review by the WCAC than judicial review under the 'any evidence standard.'" *Holden, supra* at 261-262. Clearly, the Court in *Holden* was contrasting the "more searching [administrative] review" provided under 1985 PA 103 with the "any evidence standard" of judicial review. Such a comparison makes no sense whatever if, in fact, the standard for administrative review is that any evidence *at all*, if it can be found to be competent, material, and substantial, is sufficient to require the WCAC to uphold a magistrate's decision. In this regard, we find the Court's observation in *Holden, supra* at 262, n 8, to be significant. There, the Court stated:

> Judicial review is limited review. In *Koopmans v Parsons*, 250 Mich 464; 467-469; 231 NW 87 (1930), this Court said that "[i]f there is evidence in support of [the board's] conclusion, the award will not be disturbed. . . . With the testimony on the other side of the issue we are not concerned, because we do not weigh the evidence." Similarly, in *Kostamo v Marquette Iron Mining Co*, 405 Mich 105, 135-136; 274 NW2d 411 (1979), this Court said that it would interfere with findings of the WCAB only when convinced that there was no evidence to support them.
>
> In *Aquilina v General Motors Corp*, 403 Mich 206, 213; 267 NW2d 923 (1978), construing MCL 418.861; MSA 17.237(861), this Court said that review was to determine whether questions of law were correctly decided and whether there was any fraud associated with, or *"any competent evidence"* to support, the findings of fact made by the WCAB. [Emphasis supplied.]

support the decision." We note that the Court did not use the troublesome word "any" before the words "substantial evidence."

Clearly, here the Court was again comparing the administrative review provided under 1985 PA 103 with the "any evidence standard" of judicial review. It is entirely illogical to assume that the Court would in *Goff* reverse its *Holden* position entirely and incorporate the "any evidence standard" into the WCAC's administrative review of a magistrate's decision. Indeed, there is nothing in *Goff* that indicates, or even implies, an intent to reverse *Holden.* Had there been such an intention, one would have expected the Court to state it clearly, given that *Holden* is only five years old.

Thirdly, such a restrictive view of the appropriate standard of administrative review by the WCAC does not comport with more generalized interpretations of the words "substantial evidence." Such evidence is that which a reasonable mind would accept as adequate to support a decision. *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994). See also *Ron's Last Chance, Inc v Liquor Control Comm*, 124 Mich App 179, 182; 333 NW2d 502 (1983). While such evidence is more than a scintilla of evidence, it may be less than a preponderance of the evidence. *Id.* See also *Soto v Director of Michigan Dep't of Social Services*, 73 Mich App 263, 271; 251 NW2d 292 (1977), citing *Ginsburg v Richardson*, 436 F2d 1146 (CA 3, 1971). To assert that the existence of "any" competent, material, and substantial evidence on the record is sufficient to require the WCAC to uphold a magistrate's decision is essentially to say that a scintilla of such evidence is sufficient. We do not believe that the Court reached such a conclusion in *Goff, supra.* Rather, we believe the standard remains as articulated in *Holden.* In this regard, we recognize that it is

improper for the WCAC to engage in review de novo from the outset and simply substitute its judgment for that of the magistrate. See *Illes v Jones Transfer Co (On Remand)*, 213 Mich App 44, 51, 55; 539 NW2d 382 (1995); *Kovach v Henry Ford Hosp*, 207 Mich App 107, 111; 523 NW2d 800 (1994). However, as this Court said in *York v Wayne Co Sheriff's Dep't*, 219 Mich App 370, 381, n 4; 556 NW2d 882 (1996):

> It is important to note that *Illes* and *Kovach* do not hold that it is always impermissible for the WCAC to substitute its opinion for that of the magistrate, but only that the WCAC may not *simply* substitute its own judgment, without first finding adequate reasons, grounded in the record, for rejecting the judgment of the magistrate. If the WCAC were absolutely prohibited from substituting its judgment for that of the magistrate, *even when the* WCAC *has found adequate reasons for doing so*, the WCAC would never be able to overturn the magistrate's findings on the basis of disagreement with the magistrate's evidentiary analysis. Yet, *Holden, supra*, clearly allows the WCAC to reverse the magistrate's findings on the basis of such disagreements. See 439 Mich 277-278, 285-287. [Emphasis in the original.]

### C. JUDICIAL REVIEW

The situation with respect to judicial review of WCAC decisions is just short of the exact opposite. Such judicial review is, at the outset, limited by Const 1963, art 6, § 28, which provides that "[f]indings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law." Before the enactment of 1985 PA 103, findings of fact by the WCAB were conclusive on judicial appellate review, in the absence of fraud.[4]

---

[4] See MCL 418.861; MSA 17.237(861):

After the enactment of 1985 PA 103, exactly the same standard prevailed.[5] The Michigan Supreme Court articulated the elements of this standard in *Holden, supra* at 269:

> We do not now offer a judicial standard in exegesis of the legislatively stated standard. If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not "misapprehend or grossly misapply" the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member WCAC of decisions of thirty magistrates, and bestowed on the WCAC final fact-finding responsibility subject to constitutionally limited judicial review.[6]

---

The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board . . . .

[5] See MCL 418.861a(14); MSA 17.237(861a)(14) :

The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission . . . .

[6] In *Holden, supra* at 269, n 21, the Court cited *Universal Camera Corp v NLRB*, 340 US 474, 491; 71 S Ct 456; 95 L Ed 456 (1951). In a different context, this Court has stated:

Application of the *Universal Camera* standard will preserve scarce judicial resources, enhance the role of this Court as an intermediate appellate court, and discourage unnecessary appeals. . . . We therefore hold that when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted

In 1996, this Court engaged in a thorough and scholarly analysis of judicial review of WCAC decisions in *York, supra*.[7] There, Judge MARKMAN in a thoughtful opinion first noted that, before the *Holden* decision, some panels of this Court reasoned that the "any competent evidence standard" should not be applied when reviewing the findings of the WCAC. *York, supra* at 376-377.[8] However, other panels of this Court reasoned that any expansion of the scope of this Court's review beyond the "any competent evidence standard" would be inconsistent with the Legislature's apparent intent to curtail protracted litigation in worker's compensation cases. *York, supra* at 377-378.[9]

Judge MARKMAN then summarized the basic finding in *Holden* with respect to judicial review of findings of fact as being that such review "is to be of the findings of fact made by the WCAC and not the findings of fact made by the magistrate and that the findings of fact made by the WCAC are conclusive if there is any competent evidence in the record to support those

in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Boyd v Civil Service Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996).]

See also *Kovach, supra* at 111, in which this Court stated that it must "determine that the WCAC did not grossly misapply the substantial evidence standard and that the WCAC gave an adequate reason, grounded in the record, for reversing the decision of the magistrate."

[7] In *Goff, supra* at 528, n 16, the Michigan Supreme Court categorized this Court's analysis in *York* as "correct."

[8] See, e.g., *Palmer v ITT Hancock*, 189 Mich App 509, 515; 474 NW2d 136 (1991); *Holden v Ford Motor Co*, 185 Mich App 305, 321; 460 NW2d 316 (1990), rev'd 439 Mich 257; 484 NW2d 227 (1992).

[9] See, e.g., *Weiss v Jewish Home for the Aged*, 185 Mich App 687, 705-708; 462 NW2d 821 (1990), aff'd 439 Mich 257; 484 NW2d 227 (1992).

findings." *York, supra* at 378. Judge MARKMAN went on to note, however:

> [T]he [Michigan Supreme] Court also stopped somewhat short of fully adopting this Court's conclusion in *Weiss* [*v Jewish Home for the Aged,* 185 Mich App 687; 462 NW2d 821 (1990), aff'd 439 Mich 257; 484 NW2d 227 (1992)], *supra,* that the WCAC's application of the substantial evidence test must always be affirmed on appeal if there is any competent evidence in the record to support the WCAC's findings. Rather, the Court indicated that when the WCAC's application of the substantial evidence test is challenged on appeal, reviewing courts should examine the reasoning and analysis of the decisions of the magistrate and the WCAC, the evidence considered or ignored in those decisions, the care taken, and the nature of the issues involved (particularly when there are issues of credibility to be determined by the magistrate), in order to determine whether the WCAC acted in a manner consistent with the concept of administrative appellate review that is less than review de novo. Unless it is "manifest that the WCAC exceeded its reviewing power," reviewing courts should ordinarily defer to the judgment of the WCAC. [*York, supra* at 378-379, citing *Holden, supra* at 267-269.]

### D. CONCLUSION

The WCAC's administrative review of a decision by a magistrate is no longer de novo but is still more searching than review under an "any evidence standard." There must be competent, material, and substantial evidence on the whole record to support a magistrate's decision; such evidence is that which a reasonable mind would accept as adequate, and, while such evidence must be more than a scintilla, it may be less than a preponderance.

Judicial review of the WCAC's decisions is, by contrast, considerably narrower. The tendency will be to

affirm if the WCAC (1) carefully examined the record, (2) was duly cognizant of the deference to be given to the decision of the magistrate, (3) did not misapprehend or grossly misapply the substantial evidence standard, and (4) gave an adequate reason grounded in the record for reversing the decision of the magistrate. While we will not automatically affirm in an appeal from a WCAC decision if there was any competent evidence in the record to support the WCAC's findings, we should examine (1) the reasoning and analysis of the decisions of the magistrate and the WCAC, (2) the evidence considered or ignored in those decisions, and (3) the care taken, and the nature of the issues involved, in order to determine whether the WCAC acted in a manner consistent with the concept of administrative appellate review.

In short, the proper exercise of the statutory responsibilities of the reviewing agency or court under the current WDCA requires considerable discipline. On the one hand, the reviewing agency or court must not intrude upon the legislatively mandated fact finding that is to occur at each lower level. On the other hand, the WCAC must assure that the magistrate based such fact finding upon competent, material, and substantial evidence on the whole record and this Court must assure that the WCAC, if it reverses the decision of the magistrate, has done so according to a reasoned, careful, and thorough process. Indeed, one could say that while the WCAC's administrative review is substantive in nature, our judicial review is procedural: Our task is not to ascertain whether the WCAC arrived at the "right" decision but rather to assure that the process that the WCAC used was the correct one.

### III. THE SUCCESSIVE INJURY RULE

#### A. INTRODUCTION

The Massachusetts-Michigan successive injury rule is discussed in 3 Larson, Workmen's Compensation Law, § 95.12, pp 508.130-508.133. As set forth in *Mullins v Dura Corp*, 46 Mich App 52, 55-56; 207 NW2d 404 (1973), quoting Larson, *supra*, this rule is as follows:

> "The Massachusetts-Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.
>
> *"If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second.* In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of his crutches which his first injury requires him to use. *This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.*
>
> "On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition." [Emphasis supplied in *Mullins*.]

The Michigan Supreme Court adopted this rule in *Dressler v Grand Rapids Die Casting Corp*, 402 Mich

243, 253-254; 262 NW2d 629 (1978). There, the Court also quoted Larson, *supra* at § 57.10, for the proposition " 'that the distinctive feature of the compensation system . . . is that its awards (apart from medical benefits) are made not for physical injury as such, but for "disability" produced by such injury.' " *Dressler, supra* at 252. Applying this axiom to the facts of this case, the question then is not when plaintiff was injured but rather when she was disabled. If the November 2, 1989, injury in Michigan disabled plaintiff and this *same* disability continued through her employment in New York in September of 1990, then plaintiff is entitled to Michigan benefits. If, however, the September 4, 1990, injury was *not* just a recurrence of the November 2, 1989, injury and if the September 4, 1990, injury contributed even slightly to, or "aggravated," plaintiff's disability, even if the November 2, 1989, injury contributed the major part to the final condition, then plaintiff is not entitled to Michigan benefits.

### B. THE CONFLICT BETWEEN THE MAGISTRATE'S DECISION AND THE WCAC's DECISION

As noted above, the magistrate's central finding was that all three of the medical examiners were of the opinion that the September 4, 1990, injury did not "aggravate plaintiff's underlying condition" and that the testimony of Drs. Coss and Cisek related plaintiff's disability to the November 2, 1989, injury. The WCAC disagreed with this view of the evidence and found the September 4, 1990, injury to be an "aggravation" that created a new injury date. In this regard, the WCAC noted that the two doctors[10] relied on by the

---

[10] The WCAC quoted the following excerpt from Dr. Cisek's testimony:

magistrate in fact described the September 4, 1990, injury as an "aggravation." The WCAC concluded:

> In the matter before us, plaintiff clearly suffered a work-related injury in November of 1989, causing a work-related disability which had resolved itself by August 8, 1990 when she was released to return to work without restrictions. In September 1990, plaintiff's knee collapsed while at work, such incident having been termed an aggravation of her prior condition by both her treating physician and an independent medical examiner, two individuals upon whom the

---

Q. Doctor, your report also contains an opinion regarding your apportionment of her condition between the injury of November 2nd, 1989 and a second occurrence of September 4th of 1990. Can you describe what your opinion is in that regard.

A. Yes, I did not feel that there was any permanent—permanency associated with the accident of 9/4/90, I felt that the particular accident represented an aggravation of her preexisting condition, which occurred as a result of the November, 1989 accident, namely the rupture of the anterior cruciate ligament and aggravation of patella chondromalacia.

The WCAC also quoted the following excerpt from Dr. Coss' testimony:

Q. Dr., relating—or getting to the injury that occurred in New York and the dates prior to that, you last saw this lady, I believe, on August 8th of 1990 prior to her going to work in New York, is that correct?

A. Yes.

Q. Her condition was different, was it not, than when you saw her on 9/13 of 1990, is that correct?

A. It was certainly subjectively different.

Q. She was complaining of many more things than she was on 8/8 of 1990, is that right?

A. Yes, sir.

Q. What was she complaining of on 9/13 that she was not complaining about on 8/8?

A. She was complaining of pain.

Q. Where was the pain?

A. In the knee.

Q. Was she complaining that she could not do the activities that she could on 8/8 of 1990?

A. Yes.

> magistrate indicated reliance. Thus, given this aggravation, there is a new date of injury, September 4, 1990, while plaintiff was working in the State of New York. Thus, there is no competent, material and substantial evidence to support a finding of disability as a result of plaintiff's November 2, 1989 Injury.

Thus, clearly, this situation is not analogous to that which the Supreme Court faced in *Layman, supra*. There, the majority held that the WCAC could not undertake its own fact finding in the absence of fact finding by the magistrate. Here, the WCAC disagreed with the fact finding of the magistrate and therefore reversed his decision. Under *York, supra*, the question then is whether the WCAC found adequate reasons, grounded in the record, for rejecting the judgment of the magistrate. We hold that the WCAC articulated just such adequate reasons and that its articulation was grounded in the record.

### C. THE *HOLDEN* STANDARDS

#### (1) CAREFUL EXAMINATION OF THE RECORD

Rather clearly, the WCAC carefully examined the record; indeed, it quoted extensively from the magistrate's decision in order to summarize the facts in detail. In addition, the WCAC scrutinized the testimony of Drs. Coss and Cisek to arrive at its decision that the November 2, 1990, injury constituted an "aggravation" of her prior condition. We believe that the WCAC satisfied the careful examination of the record requirement of the *Holden* standards.

#### (2) DUE COGNIZANCE OF THE DEFERENCE TO BE GIVEN TO THE MAGISTRATE'S DECISION

The WCAC, as noted, ultimately reached the decision that it must reverse the magistrate's decision. Clearly,

then, the WCAC ultimately determined not to defer to that decision. However, the WCAC based its determination on its view that the finding of a continuing disability from the Michigan injury was not supported by competent, material, and substantial evidence. It would be inaccurate to say that there was *no* competent, material, and substantial evidence on the record to justify the magistrate's decision. In our view, however, the discipline that is so necessary for the proper functioning of the Legislature's carefully crafted administrative and judicial review system in WDCA cases requires that *we* not substitute our view with respect to the substantive *weight* to be given to the testimony of the three medical witnesses. We are satisfied, in this regard, that the WCAC was cognizant of the deference it was required to give to the magistrate's decision. In our view, sensitivity to the findings and conclusions of magistrates does not *ipso facto* require that the WCAC agree automatically and universally with such findings and conclusions.

(3) MISAPPREHENSION OR GROSS MISAPPLICATION OF THE SUBSTANTIAL EVIDENCE STANDARD

The WCAC articulated and applied the competent, material, and substantial evidence on the whole record standard. Our review of the WCAC's decision discloses no misapprehension or gross misapplication of that standard.

(4) ADEQUATE REASONS GROUNDED IN THE RECORD FOR REVERSAL

As noted, the WCAC reviewed and extensively quoted from the record before the magistrate and, indeed, from the magistrate's decision. It found that competent, material, and substantial evidence from

the testimony of two examining physicians existed to support the proposition that the September 4, 1990, injury aggravated plaintiff's prior condition. Under the Massachusetts-Michigan successive injury rule, therefore, the WCAC properly found that plaintiff was not entitled to Michigan benefits.

### D. THE *YORK* STANDARDS

#### (1) THE REASONING AND ANALYSIS OF THE DECISIONS OF THE MAGISTRATE AND THE WCAC

The magistrate's decision does an excellent job of summarizing the primarily medical testimony that was presented at the benefits hearing. However, the magistrate's decision does not, in any comprehensible fashion, articulate the successive injury rule or apply the reasoning of Michigan cases adopting that rule. By contrast, the WCAC articulates the substance of the rule, albeit also without citation, and correctly states the governing principle that an aggravation of a prior condition is in fact a new injury, triggering a new start date and therefore new liability. We are satisfied that the reasoning and analysis of the WCAC are superior to that of the magistrate.

#### (2) THE EVIDENCE CONSIDERED OR IGNORED IN THE MAGIS-TRATE'S DECISION AND THE WCAC's DECISION

We again note that it is not accurate to say that there was *no* competent, material, and substantial evidence to support the magistrate's decision. However, it is clear that the magistrate chose to ignore directly relevant testimony concerning the central issue of aggravation by both Dr. Coss and Dr. Cisek. By contrast, the WCAC's decision highlights this testimony; indeed, it is this testimony that is the fulcrum of its determination to reverse the magistrate's decision.

This decision regarding the appropriate weight to be given to conflicting elements of expert testimony is within the administrative expertise of the WCAC, and we cannot, in a disciplined system of review, substitute our judgment for that of the WCAC on this point.

### (3) THE CARE TAKEN AND THE NATURE OF THE ISSUES

We view the WCAC's decision to be carefully crafted and succinctly reasoned. It directly addresses the issues involved and applies the competent, material, and substantial evidence contained in the record to these issues. We believe that the WCAC's decision satisfies this element of the *York* standards.

### IV. CONCLUSION

When we apply the *Holden* standards and the *York* standards, we are not left with the definite and firm conviction that the WCAC made a mistake when it reversed the magistrate's decision. Applying the *Holden* standards, we find that the WCAC carefully examined the record and, although it ultimately reversed the decision of the magistrate, it appeared to be cognizant of the deference to be given to his decision. Further, the WCAC did not misapprehend or grossly misapply the substantial evidence standard and it gave adequate reasons grounded in the record for reversing the decision of the magistrate. In reaching these decisions, we have applied the *York* analytical standard to examine the reasoning and analysis of the decisions of the magistrate and the WCAC, the evidence considered or ignored in those decisions, the care taken, and the nature of the issues involved, in order to determine whether the WCAC acted in a manner consistent with the concept of administrative

appellate review. We believe that the process the WCAC used was the correct one. We therefore affirm.