MUDEL v GREAT ATLANTIC & PACIFIC TEA COMPANY

CONNAWAY v WELDED CONSTRUCTION COMPANY

Docket Nos. 111702, 113799. Argued January 11, 2000 (Calendar Nos. 2-3). Decided July 25, 2000.

John Mudel sought worker's compensation for injuries suffered as a result of his employment with the Great Atlantic & Pacific Tea Company. A magistrate concluded that he suffered from an occupational disease and entered an open award of benefits. The Worker's Compensation Appellate Commission, on administrative appeal, determined that the magistrate's findings of fact regarding occupational disease were not supported by competent, material, and substantial evidence on the whole record. However, it affirmed the magistrate's award of benefits by correcting the statutory basis for that award from an occupational disease compensable under MCL 418.401; MSA 17.237(401) to a personal injury compensable under MCL 418.301; MSA 17.237(301). The Court of Appeals, Hood, P.J., and Michael J. Kelly and Gage, JJ., denied leave to appeal (Docket No. 204028). The defendant appeals.

Deborah L. Connaway received worker's compensation for a job-related knee injury suffered while employed by Welded Construction Company on a job site in Michigan in 1989. She later returned to work, and was assigned to a job site in New York. In 1990, she again injured her knee, and received worker's compensation benefits in the state of New York. She additionally applied for worker's compensation benefits in Michigan. A magistrate determined that the second injury was a mere reoccurrence of the first, concluded that Michigan law applied, and entered an open award of benefits. The WCAC, applying the substantial evidence test, determined that the magistrate's factual findings regarding her continuing disability and a reoccurrence of her Michigan injury were not supported by competent, material, and substantial evidence, and therefore reversed. Citing expert medical testimony contained in the record, it determined that the New York injury was truly an aggravation of the Michigan injury and that the successive injury rule required Connaway to pursue worker's compensation benefits in New York, rather than Michigan. The Court of Appeals, MacKenzie, P.J., and

WHITBECK and G. S. ALLEN, JJ., affirmed. 233 Mich App 150 (1998) (Docket No. 201559). The plaintiff appeals.

In an opinion by Justice MARKMAN, joined by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, and YOUNG, the Supreme Court *held*:

The Legislature has created two very distinct standards of review for worker's compensation cases. The "substantial evidence" standard governs the WCAC's review of the magistrate's findings of fact, while the "any evidence" standard governs the judiciary's review of the WCAC's findings of fact. The WCAC enjoys statutory authority to make independent findings of fact, regarding issues that have been addressed or overlooked by the magistrate, as long as the record is sufficient for administrative review and does not prevent the WCAC from reasonably exercising its reviewing function without resort to speculation. The role of the WCAC is to ensure that the factual findings in worker's compensation cases are supported by the requisite evidence. The role of the judiciary is to ensure that the WCAC properly recognized and exercised its administrative appellate role. In *Connaway*, the WCAC acted within its authority when it reversed the magistrate's award of wage loss benefits for an injury that occurred in New York. The WCAC also acted within its authority in *Mudel* when it affirmed the magistrate's open award of benefits, but altered the statutory basis for that award.

1. The WCAC reviews the magistrate's findings of fact under the "substantial evidence" standard, while the judiciary reviews the WCAC's findings of fact under the "any evidence" standard. The standards are separate and distinct; they originate from different statutory sources and serve different purposes. The WCAC's review of the magistrate's decision involves reviewing the whole record, analyzing all the evidence presented, and determining whether the magistrate's decision is supported by competent, material, and substantial evidence. In contrast, MCL 418.861a(14); MSA 17.237(861a)(14) provides that the judiciary must treat the WCAC's factual findings as conclusive on appellate review in the absence of fraud. Absent from the statutory formulation of the judicial standard of review are any references to a review of the whole record, a qualitative or quantitative analysis of the evidence presented on both sides, or a determination of whether competent, material, or substantial evidence supports the decision made below. Thus, the role of the WCAC is to ensure that factual findings are supported by the requisite evidence, while the role of the judiciary is to ensure the integrity of the administrative process.

2. These distinct standards of review contain different levels of deference for the decision under review. The "substantial evidence"

standard, governing the WCAC's review of the magistrate's findings of fact, provides for review that is clearly more deferential to the magistrate's decision than the de novo review standard previously employed. Nevertheless, the WCAC has the power to engage in both a qualitative and quantitative analysis of the whole record, which means that it need not necessarily defer to all the magistrate's findings of fact. In contrast, the "any evidence" standard, governing the judiciary's review of the WCAC's findings of fact, provides for less searching review—review that is deferential to the skill and experience of the WCAC in this highly technical area of the law. As long as there exists in the record any evidence supporting the WCAC's decision, and as long as the WCAC did not misapprehend its administrative appellate role, then the judiciary must treat the WCAC's factual decisions as conclusive.

3. In *Mudel,* the WCAC acted within its authority when it affirmed the magistrate's open award of benefits but altered the statutory basis for that award. In *Connaway,* the WCAC also acted within its authority when it reversed the magistrate's award of wage loss benefits for an injury that occurred in New York.

Affirmed.

Justice KELLY, joined by Justice CAVANAGH, concurring in part and dissenting in part, stated that the WCAC exceeded its authority in reversing the decision of the magistrate that was based on competent, material, and substantial evidence on the entire record. Further, the majority's unnecessary change in worker's compensation law will create, rather than resolve, confusion in the state's jurisprudence.

Stare decisis strongly encourages courts to adhere to their precedents. A prior decision should be overruled only where a court is convinced that it is both wrongly decided and that less harm will result from overruling than following it.

If a magistrate's finding of fact is supported by "any" competent, material, and substantial record evidence, then it is supported by competent, material, and substantial evidence on the whole record. The mere use of the word "any" does not have the effect of fusing or confusing the "substantial evidence" standard with the "any evidence" standard. Under the guise of clarifying the standards of review, the majority has eliminated meaningful appellate court oversight of the operation of the WCAC, essentially restoring to the WCAC de novo review of magistrates' decisions, something the Legislature sought to eliminate in 1985 PA 103. It also removes the ability of appellate courts to examine a magistrate's decision to determine whether the WCAC exceeded its appellate role, and it leaves no means by which to compel the WCAC's compliance with the "sub-

stantial evidence" standard that the WDCA directs the WCAC to employ.

*Daniel M. Bridges* for plaintiff-appellee in *Mudel.*

*Martha M. Glaser* for the plaintiff-appellant in *Connaway.*

*Humphrey, Hannon, Moriarity & Schoener, P.C.* (by *Robert J. Humphrey, Donald H. Hannon,* and *Denise L. Clemmons*), for defendant-appellant in *Mudel.*

*Thomas J. Veum* for the defendants-appellees in *Connaway.*

Amicus Curiae:

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Michigan Defense Trial Counsel.

MARKMAN, J.

### I. INTRODUCTION

Considerable confusion exists in the Michigan judiciary in a significant area of worker's compensation law—the standards for reviewing decisions of the magistrate and the Worker's Compensation Appellate Commission (WCAC). As a result of this confusion, there is, in our judgment, sometimes the appearance (although we do not believe the reality) that decisions are made in this realm at least partly on the basis of which results are favored by a particular appellate court. In addition, because the decisions of the appellate courts are resultantly more arbitrary and less predictable, the appellate process has become a more

prolonged one as parties understandably are more inclined to pursue repeated appeals in the hope of eventually achieving a favorable judgment at some level.

Where the WCAC and the magistrate agree on the facts and legal conclusions in a particular worker's compensation case, the courts will rarely disturb the result. However, the problem arises when the WCAC reverses the magistrate on some issue and the judiciary is presented with two conflicting decisions from the administrative level. In that situation, judges are confronted with two distinct lines of case law, each of which sets forth a fundamentally different administrative and judicial standard of review in worker's compensation cases. Depending upon which of these lines of case law is emphasized, there is a high likelihood that a different appellate result will be reached. Courts that cite case law such as *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992), that stresses the extraordinary deference accorded to the WCAC in this highly technical area of the law, will more often than not *affirm* the WCAC in its award or denial of benefits to an employee. Meanwhile, courts that cite case law such as *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507; 563 NW2d 214 (1997), that stresses the deference accorded by the WCAC to the magistrate, will more often than not *reverse* the WCAC in this decision.[1] Because of these conflicting lines of case law, there is inevitably a perception that

---

[1] Contrary to the dissent's assertion, the standards of review in worker's compensation cases are far from "settled." Thus, we attempt to clarify the standards of review in this vexing area of jurisprudence, by construing and implementing the statutory language drafted by the Legislature as faithfully as possible. Although we believe that we have done so as conscientiously as possible, we are not oblivious to the fact that ten-

courts may have been tempted to choose which line of cases to emphasize in accordance with the results reached in an individual case. In effect, such conflicting law undermines the appearance of there being a principled and consistent standard defining the proper level of review that should be exercised by the courts. Further, it may appear to the public that the result in a particular case is a function less of well-defined legal principles than of the predispositions of individual judges. In addition, because of the heightened potential for arbitrary decision making, worker's compensation cases may often take years to work their way back and forth through the administrative and judicial processes and attain finality. The uncertainty concerning Worker's Disability Compensation Act (WDCA) standards of review manifested by such a prolonged reviewing process benefits neither the injured employee nor the employer, while undermining public confidence in the fairness of the judicial system in a sensitive area of decision making.

Therefore, in these combined worker's compensation cases, we once again face the task of clarifying and definitively setting forth the proper standards of administrative and judicial review, to resolve the confusion currently existing in the law and to further the efficient administration of worker's compensation cases.[2] To that end, we reaffirm our decision in

___

sions will continue to operate within the act, at least until the Legislature clarifies its language.

[2] The dissent contends that "this Court has been careful to craft workable standards of appellate review." *Post* at 733. However, as Judge Whitbeck noted in *Connaway v Welded Construction Co*, 233 Mich App 150, 160; 592 NW2d 414 (1998), "Few subjects in Michigan jurisprudence have been so thoroughly explored—indeed one might even say dissected—as the endlessly intricate question of the appropriate standard of

*Holden, supra,* regarding the administrative and judicial standards of review applied in worker's compensation cases. Because we believe that this Court's decision in *Goff, supra,* implicitly contradicted the *Holden* rule and altered the announced standards of review, we overrule *Goff* insofar as it is inconsistent with the statutory language and with our decision in *Holden.* Further, we overrule the holding of *Layman v Newkirk Electric Associates, Inc,* 458 Mich 494; 581 NW2d 244 (1998), to the extent that it clearly misstated the law with regard to the WCAC's authority to make independent factual findings.[3]

With respect to the instant cases, in *Mudel v Great Atlantic & Pacific Tea Co,* we find that the requirements of MCL 418.861a(11); MSA 17.237(861a)(11) were satisfied because the plaintiff argued alternatively for both occupational disease and personal injury benefits. Further, in *Connaway v Welded Construction Co,* we find that the successive injury rule requires the plaintiff to pursue worker's compensation benefits in the state of New York, where her disability arose, rather than in Michigan. After examining the decision of the WCAC in each of these cases, we conclude that the WCAC acted within its authority in *Mudel* by affirming the magistrate's award of benefits, and in *Connaway* by reversing the magistrate's award

---

review in WDCA cases." Despite that thorough exploration, the current case law fails to provide the bench and bar with clear guidance.

[3] For the sake of assisting the bench and bar, an appendix to this opinion provides a summary of the proper legal principles to be applied regarding the standard of review applied by the WCAC and the judiciary over findings of fact in worker's compensation cases. This Court continues to review questions of law involved in any final order of the WCAC under a de novo standard of review. *DiBenedetto v West Shore Hosp,* 461 Mich 394, 401; 605 NW2d 300 (2000).

of benefits. We therefore affirm the holdings of the WCAC in each of these consolidated cases.

## II. STANDARDS OF REVIEW

In worker's compensation cases, there are two separate levels of review: administrative review and judicial review. As explained in *Holden, supra,* the WCAC reviews the magistrate's findings of fact under the "substantial evidence" standard, while the judiciary reviews the WCAC's findings of fact under the "any evidence" standard. These two standards of review are separate and distinct; they originate from different statutory sources and serve different purposes.

We must begin with the Michigan Constitution, which provides the underlying basis for both standards of review. Const 1963, art 6, § 28, provides as follows:

Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.

The constitution makes clear that the Legislature has authority to adopt different standards of review in worker's compensation cases, that is, standards that are "otherwise provided by law," through the enactment of statutory provisions. Indeed, the Legislature has provided these standards throughout the long and complex evolution of this state's worker's compensation statute, now entitled the WDCA; MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* Through 1985 PA 103, effective October 1, 1986, the Legislature adopted the "substantial evidence" standard for the WCAC's administrative review of the magistrate's fac-

tual findings, replacing the de novo standard of review previously applied by the former Worker's Compensation Appeal Board (WCAB) under earlier versions of the worker's compensation statute. The "substantial evidence" standard, contained in MCL 418.861a(3); MSA 17.237(861a)(3), provides as follows:

> Beginning October 1, 1986 findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record. As used in this subsection, "substantial evidence" means such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion.

The surrounding statutory provisions serve to flesh out the proper meaning and application of the "substantial evidence" standard. The "whole record," for instance, means "the entire record of the hearing including all of the evidence in favor and all the evidence against a certain determination," MCL 418.861a(4); MSA 17.237(861a)(4), and the WCAC's "review of the evidence pursuant to this section shall include both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review." MCL 418.861a(13); MSA 17.237(861a)(13). Therefore, the WCAC's review of the magistrate's decision involves reviewing the whole record, analyzing all the evidence presented, and determining whether the magistrate's decision is supported by competent, material, and substantial evidence.

An important part of the WCAC's statutory reviewing authority is the "qualitative and quantitative" analysis of the "whole record." This statutory language, along with that of MCL 418.861a(14); MSA 17.237(861a)(14),

grants the WCAC certain fact-finding powers, and permits it in some circumstances to substitute its own findings of fact for those of the magistrate, if the WCAC accords different weight to the quality or quantity of evidence presented.[4] However, application of the clear and plain language of MCL 418.861a(13); MSA 17.237(861a)(13) does not connote a de novo review by the WCAC of the magistrate's decision, as asserted by the dissent. Clearly, it would be improper for the WCAC to engage in its own statutorily permitted independent fact finding if "substantial evidence" on the whole record existed supporting the decision of the magistrate.

In contrast to the standard for administrative review, a separate statutory provision sets forth the standard by which the judiciary reviews the WCAC's findings of fact. MCL 418.861a(14); MSA 17.237(861a)(14) provides that the judiciary must treat the WCAC's factual findings as conclusive on appellate review:

> The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission, if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules.

Strikingly absent from the statutory formulation of the judicial standard of review, in contrast to the administrative standard of review, are any references

---

[4] We do not attempt to define the parameters of the WCAC's "qualitative and quantitative" review in the instant cases because the facts presented do not require us to do so and because the parties did not address the issue.

to a review of the whole record, a qualitative or quantitative analysis of the evidence presented on both sides, and a determination of whether competent, material, or substantial evidence supports the decision made below. Despite these marked distinctions, the dissent simply fails to engage in the necessary process of parsing the clear and plain language of the WDCA. While the WCAC's review is a highly fact-intensive examination, judicial review is not. Instead, the judiciary is directed, by constitutional and statutory provisions, to treat the WCAC's findings of fact as *conclusive*, in the absence of fraud.

In *Holden, supra*, 439 Mich 263, we examined the above constitutional and statutory provisions and concluded as follows:

> The Legislature, by employing the language of the constitution in stating that the fact finding of the WCAC is final subject to limited judicial review, made clear that judicial review by the Court of Appeals or this Court of a WCAC decision is to be of the findings of fact made by the WCAC and not the findings of fact made by the magistrate. And the findings of fact made by the WCAC are conclusive if there is *any competent evidence* to support them. [Emphasis added.]

This is the crucial difference between the administrative and judicial standards of review in worker's compensation cases: the role of the WCAC is to ensure that factual findings are supported by the requisite evidence, while the role of the judiciary is to ensure the integrity of the administrative process. The WCAC is required by MCL 418.861a(13); MSA 17.237(861a)(13) to employ a "qualitative and quantitative analysis" of competing evidence, on consideration of the whole record, and determine the level of

support for the magistrate's factual findings. The judiciary does not engage in this type of review, but must accept the WCAC's factual findings as conclusive, in the absence of fraud.[5]

These two very distinct standards of review created by the Legislature contain very different levels of deference for the decision under review. The "substantial evidence" standard, governing the WCAC's review of the magistrate's findings of fact, provides for review which is clearly more deferential to the magistrate's decision than the de novo review standard previously employed. Nevertheless, the WCAC has the power to engage in both a "qualitative and quantitative" analy-

---

[5] This distinction between the administrative and judicial standards of review flows from the long-recognized principle that administrative agencies possess expertise in particular areas of specialization. Because the judiciary has neither the expertise nor the resources to engage in a fact-intensive review of the entire administrative record, that type of detailed review is generally delegated to the administrative body. In the particular context of worker's compensation cases, a highly technical area of law, the judiciary lacks the expertise necessary to reach well-grounded factual conclusions. Worker's compensation cases typically involve lengthy records replete with specialized medical testimony. These cases require application of extremely technical and interrelated statutory provisions that determine an employee's eligibility for disability benefits. The judiciary is not more qualified to reach well-grounded factual conclusions in this arena than the administrative specialists. Therefore, the Legislature has decided that factual determinations are properly made at the administrative level, as opposed to the judicial level.

Further, the courts simply cannot review the record in every worker's compensation case in the detail required to make conclusions about the sufficiency of the magistrate's decision. Worker's compensation cases are typically fact intensive, involving lengthy deposition testimony and medical documentation. If the courts were to attempt a review of each and every worker's compensation case with an eye toward making detailed factual conclusions, dockets would become impossibly burdened with worker's compensation cases, further delaying the resolution of injured workers' claims for benefits. These considerations—lack of appropriate expertise and resources—demonstrate the practical benefits flowing from the Legislature's creation of a two-tier reviewing process, which delegates to the WCAC the role of ultimate factfinder, while limiting the judiciary to the role of guardian of procedural fairness.

sis of the "whole record," which means that the WCAC need not necessarily defer to all the magistrate's findings of fact.

In contrast, the "any evidence" standard, governing the judiciary's review of the WCAC's findings of fact, provides for less searching review—one that is deferential to the skill and experience of the WCAC in this highly technical area of the law. As this Court explained in *Holden*, the judicial standard of review is extremely deferential:

> If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not "misapprehend or grossly misapply" the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member WCAC of decisions of thirty magistrates, and bestowed on the WCAC final fact-finding responsibility subject to constitutionally limited judicial review. [439 Mich 269.]

The *Holden* formulation of judicial review, which requires the courts to ensure that the WCAC did not "misapprehend or grossly misapply" the "substantial evidence" standard, means that the judiciary must ensure that the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate. As long as there exists in the record any evidence supporting the WCAC's decision, and as long as the WCAC did not misapprehend its administrative appellate role (e.g., engage in de novo review; apply

the wrong rule of law), then the judiciary must treat the WCAC's factual decisions as conclusive.[6]

We continue to believe that the *Holden* decision correctly established the distinction between the proper standards for administrative and judicial review in worker's compensation cases, and we expressly reaffirm our decision in that case.[7] Unfortunately, decisions of this Court in the wake of *Holden* effectively overruled that precedent, without doing so expressly. Specifically, this Court's decision in *Goff* requires an independent judicial determination whether the magistrate's findings of fact are supported by the requisite competent, material, and sub-

---

[6] Consideration of whether the WCAC has misapprehended its administrative appellate role arises from this Court's attempts to resolve the tensions inherent in the statutory language. Although the dissent fails to recognize the clarifying and defining aspects of today's holding, we believe that by adhering to the straightforward statutory language relating to judicial review of worker's compensation cases, these tensions can and will be mollified.

[7] Although we are compelled to overrule *Goff*, we note that both Chief Justice MALLETT, writing for the majority, and Justice WEAVER, dissenting in part and concurring in part in that case, observed that a recent Court of Appeals opinion, *York v Wayne Co Sheriff's Dep't*, 219 Mich App 370; 556 NW2d 882 (1996), remanded 456 Mich 893 (1997), set forth a correct application of the *Holden* guidelines:

> A recent decision by the Court of Appeals illustrates the correct analysis that the Court must employ in determining whether the WCAC exceeded its reviewing authority. . . . Correctly applying the guidelines from *Holden*, the Court of Appeals held that the WCAC properly found that the magistrate's decision was not based on substantial evidence. [454 Mich 528, n 16.]

> [W]hile the majority opinion cites *York* . . . , as an illustration of correct judicial review, and I agree it is, it seems to me that the majority fails to adopt the standard articulated in that case. [454 Mich 543-544.]

These comments hardly demonstrate an intentional rejection of *Holden*.

stantial evidence on the whole record. In *Goff*, the majority stated:

> [W]here a party claims that the WCAC has exceeded its power by reversing the magistrate, meaningful review must begin with the magistrate's decision, because if competent, material, and substantial evidence based on the whole record supports the magistrate's decision, the WCAC need go no further. If it does, the WCAC is exceeding its authority. [454 Mich 513.]

In her dissenting opinion in *Goff*, Justice WEAVER warned against the effect that the majority opinion in that case would have on the *Holden* decision and on the standards of review in worker's compensation matters:

> [T]he [*Goff*] majority opinion will have the effect of undermining this Court's decision in *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992), and rendering it virtually useless, increasing the backlog of reviewing courts, and depriving the [WCAC] of its authority to conduct a qualitative, as well as a quantitative, review of the whole record . . . [and] the majority's standard will expand judicial appellate review to an extreme unintended by the Legislature and contrary to the legislative scheme for review of worker's compensation awards . . . . In effect, the majority's position has appellate courts stepping into the shoes of the commission by conducting a qualitative and quantitative review of the whole record that the Legislature only intended the commission perform. In so doing, the majority, in the name of further explaining this Court's *Holden* analysis, has so deviated from *Holden* as to render that decision virtually useless. [454 Mich 540-541.]

We are persuaded that *Goff* resulted in an errant construction of plain statutory language, erroneously requiring the judiciary to look first at the magistrate's decision and to determine anew whether that deci-

sion is supported under the substantial evidence standard. This is a direction that is inconsistent with *Holden*. The rule of law established by *Goff* is not faithful to the statutory language, which commands that the "findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive." MCL 418.861a(14); MSA 17.237(861a)(14). The dissent's assertion that *Goff* is consistent with the WDCA avoids the inconvenience of grappling with the actual statutory language of the act. The judiciary is simply not empowered to look beyond the WCAC's findings of fact. The Legislature has granted to the WCAC the authority and responsibility for reviewing the magistrate's findings of fact, to determine whether those findings are adequately supported by the record. The Legislature has withheld that same authority and responsibility from the judiciary—the role of the Court of Appeals and this Court is to treat the WCAC's findings as conclusive and to "review questions of law involved with any final order of the commission." MCL 418.861a(14); MSA 17.237(861a)(14).

That the justices of this Court may have come to a different conclusion than the WCAC if we were evaluating a matter de novo, or that we may find the magistrate's conclusion to be better supported than the WCAC's conclusion, is irrelevant. Given the limited scope of judicial review in worker's compensation cases, we may not substitute our own judgment for that of the WCAC by independently reviewing each magistrate's decision to determine whether there is competent, material, and substantial evidence on the whole record supporting the magistrate's findings of fact. If that were the case, then what would be the

role of the WCAC as the presumably expert administrative agency in this realm? The courts would routinely be stepping into the WCAC's shoes and conducting an independent review of the entire record, to determine if the magistrate's decision complied with the "substantial evidence" standard. This cannot be what the Legislature intended when it established a two-tiered reviewing process that principally entrusted factual issues to the WCAC and legal issues to the judiciary.

The decision in *Goff* also contains language that improperly directs the WCAC to review a magistrate's decision under the "any evidence" standard, rather than the "substantial evidence" standard. In *Goff, supra,* 454 Mich 538, the majority stated:

> If the magistrate's decision is reasonably supported in the record by *any* competent, material, and substantial evidence, then it is conclusive and the WCAC must affirm. If it does not, it is exceeding the scope of its reviewing power and impermissibly substituting its judgment for the magistrate's. [Emphasis added.]

This language conflates the separate and distinct standards of review employed at the administrative and judicial levels. The dissent's statement that the "mere use of the word 'any' does not have the effect of fusing or confusing the 'substantial evidence' standard with the 'any evidence' standard," *post* at 735, altogether ignores the grammatical application of the adjective; the word "any," as used in *Goff,* clearly expresses an attribute of the word "evidence" that follows. Thus, while "any competent, material, and substantial evidence" may not equate with "any evidence" in the dissent's judgment, it would hardly be irrational for the WCAC, pursuant to *Goff,* to determine that, if the magistrate's finding of fact was supported by

"any" evidence, it must affirm. However, this determination would be contrary to the actual statutory language of MCL 418.861a(3); MSA 17.237(861a)(3), wherein the word "any" is nowhere to be found.

While MCL 418.861a(3); MSA 17.237(861a)(3) established the "substantial evidence" standard for WCAC review over the magistrate's decision, MCL 418.861a(14); MSA 17.237(861a)(14) established the "any evidence" standard for judicial review over the WCAC's decision. These two standards of review are clearly separate and distinct, emanating from different statutory sources and imparting different standards of review.

Therefore, unlike the unstated but effective overruling of *Holden* in *Goff*, we expressly overrule *Goff*, insofar as it contradicts the statutory language and departs from our decision in *Holden*. Yet, we wish to make clear that we do not lightly overrule existing precedent. In *People v Graves*, 458 Mich 476, 480-481; 581 NW2d 229 (1998), this Court recently discussed the proper circumstances under which it would overrule prior case law:

> It is true of course that we do not lightly overrule a case. This Court has stated on many occasions that "[u]nder the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." Further, . . . "[b]efore this court overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it."
>
> When it becomes apparent that the reasoning of an opinion is erroneous, and that less mischief will result from overruling the case rather than following it, it becomes the duty of the court to correct it. Although we respect the

principle of stare decisis, we also recognize the common wisdom that the rule of stare decisis is not an inexorable command. [Citations omitted.]

Moreover, as we recently explained in *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000), a court is most justified in overruling an earlier case if the prior court misconstrued a statute.

Directing the WCAC to review the magistrate's decision under the "any evidence" standard, and requiring the judiciary to review the *magistrate's* decision and determine anew whether that decision is supported under the "substantial evidence" standard, as espoused in *Goff*, unequivocally contradicts the clear and plain language of the WDCA. Therefore, allowing *Goff* to stand, in our judgment, would perpetuate the lack of a principled and consistent standard defining the proper level of review to be applied by the courts and would permit the continuation of a heightened potential for arbitrary, inconsistent, and highly confused decision making in worker's compensation cases. Such results would be contrary to the statute and far more injurious to the administrative and judicial processes than any effect associated with our statutorily compelled decision to overrule *Goff*.

The WCAC must review the magistrate's decision under the "substantial evidence" standard, while the courts must review the WCAC's decision under the "any evidence" standard. Review by the Court of Appeals and this Court begins with the WCAC's decision, not the magistrate's. If there is any evidence supporting the WCAC's factual findings, and if the WCAC did not misapprehend its administrative appellate role in

reviewing decisions of the magistrate, then the courts must treat the WCAC's factual findings as conclusive.[8]

We next consider the holding of *Layman, supra,* with regard to the WCAC's authority to make independent factual findings.[9] In *Layman,* the WCAC reversed the magistrate's open award of worker's compensation benefits to the plaintiff, and the Court of Appeals denied leave to appeal. This Court granted leave to appeal and vacated the WCAC's decision on the grounds that the WCAC lacked the authority to make factual findings, holding that the WCAC must always remand a case to the magistrate where additional factual findings need to be made, even when the record is complete:

> Where a factual finding needs to be made, but has not been rendered by the magistrate, the case should be remanded to the magistrate. When the commission finds that the magistrate has failed to make necessary fact findings, it should remand the case to the magistrate for that purpose. [458 Mich 509.]

Contrary to the above language of *Layman,* this Court cannot abrogate the express statutory language enacted by the Legislature, absent a finding that the statute contravenes the dictates of our state or federal constitution. That the Legislature provided the WCAC with fact-finding powers cannot be denied:

> The *findings of fact made by the commission* acting within its powers, in the absence of fraud, shall be conclu-

---

[8] See footnote 3.

[9] When granting leave to appeal in *Mudel,* we directed both parties to address "whether this Court should overrule its decision in *Layman v Newkirk Electric Associates, Inc,* 458 Mich 494 [581 NW2d 244] (1998)." 460 Mich 851 (1999).

sive. [MCL 418.861a(14); MSA 17.237(861a)(14) (emphasis added).]

How can the dissent, in a consistent manner, reconcile "[t]he findings of fact made by the commission" with its statement that the WCAC must avoid independent fact finding, and thus its conclusion that *Layman* remains "sound"? We are left wanting with regard to an answer to this question because the Legislature clearly and plainly authorized the WCAC to make findings of fact.

Additionally, we believe the *Layman* holding is insupportable in light of MCL 418.861a(12); MSA 17.237(861a)(12), which provides that the WCAC "may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined that the record is insufficient for purposes of review." The Legislature's use of "may" rather than "shall" clearly indicates that the WCAC is not *required* to remand a case to the magistrate in every instance in which the magistrate has failed to make full factual findings. The dissent's belief that the WCAC is precluded from engaging in any independent fact finding effectively substitutes its own public policy choice for those already made by the Legislature and ignores the clear and plain language of MCL 418.861a(14); MSA 17.237(861a)(14). As long as the WCAC is presented with a record that allows it to intelligently make its own factual findings, the Legislature has declared that the WCAC is free to do so.

We believe that *Layman*'s reliance on *Woody v Cello-Foil Products (After Remand)*, 450 Mich 588; 546 NW2d 226 (1996), was misplaced. *Woody* stands for the limited proposition that the WCAC cannot review a decision by a magistrate, if the magistrate's

opinion is insufficiently detailed to allow the review-
ing body to separate findings of fact from legal deter-
minations. 450 Mich 594-595. Because the magistrate
had not sufficiently separated his factual and legal
determinations, the WCAC was forced to speculate
regarding the facts and the legal reasoning relied
upon. Contrary to *Layman*, *Woody* did not hold that
the WCAC lacked authority to make independent fac-
tual findings.

Nevertheless, we do recognize that aspects of the
*Woody* opinion are confusing, as they may be read in
a manner that conflicts with our current holding.
First, the *Woody* opinion purported to look beyond
the WCAC's findings of fact to examine the magistrate's
findings of fact in order to weigh those findings
against the "substantial evidence" standard. As
explained above, the judiciary's role is to review the
WCAC's findings of fact, not the magistrate's, and the
judiciary is compelled by statute to treat the WCAC's
findings of fact as conclusive if supported by any evi-
dence in the record, as long as the WCAC did not
misapprehend its administrative appellate role.

Second, the *Woody* opinion remanded the case to
the magistrate for further factual findings. Because
the Legislature expressly granted the WCAC fact-
finding authority, MCL 418.861a(14); MSA
17.237(861a)(14), and because it is the WCAC's role to
conduct a thorough review of the matter, including
"both a qualitative and quantitative analysis" of the
"whole record," the case should have been remanded
to the WCAC, not to the magistrate. While we recognize
the confusing aspects of *Woody*, we nevertheless
believe that the opinion focused not on the WCAC's
authority to make independent findings of fact, but on

the need for the reviewing body to avoid speculation, when it is impossible to "separate the facts found from the law applied." 450 Mich 597. Therefore, *Layman*'s reliance on *Woody* was misplaced.

We believe that *Layman* expressly contradicts the text of the WDCA by declaring that the WCAC has no authority to make original findings of fact. Given this obvious and express error in the application of statutory language, this Court must overrule the *Layman* holding. We are convinced that *Layman* was wrongly decided, as its holding explicitly contradicts the statutory grant of fact-finding authority to the WCAC. Further, we believe that far less injury will result from overruling the case than from following it. *Graves*, *supra* at 480-481. It is clear that application of the *Layman* holding carries the potential for creating a substantial administrative backlog in worker's compensation cases,[10] because *Layman* requires the WCAC to remand all cases where the magistrate has failed to articulate a specific finding of fact on any issue, regardless of whether the record is sufficient for the WCAC to resolve the matter without resort to speculation. This remand requirement thus threatens to create unnecessary delays in the worker's compensation system and to dilute some of the benefit of an administrative system designed to make relatively expedi-

---

[10] For example, in the instant case, A&P argues that *Layman*'s requirement of "[r]emand for factual determination of an overlooked point slows the administrative process to a virtual standstill." A&P contends that docket congestion at the administrative level results in a delay of twelve to eighteen months before the WCAC typically resolves an appeal from the magistrate. The administrative process is further delayed when a case is remanded to the magistrate for additional findings of fact because the case returns to the WCAC after remand, where another twelve to eighteen months pass before the WCAC issues its second opinion and order.

tious decisions about compensation for injured employees.

A return to the express language of the Legislature, granting the WCAC authority to make independent findings of fact, will further the efficient administration of worker's compensation cases, in accord with the Legislature's explicit intent. Because the Legislature clearly granted the WCAC authority to make independent factual findings, *Layman*'s holding to the contrary is clearly erroneous. Because less injury will result from overruling the case than from following it, we expressly overrule *Layman* here.[11]

### III. *MUDEL v GREAT ATLANTIC & PACIFIC TEA CO*

In *Mudel*, plaintiff John Mudel worked for defendant A&P,[12] in various capacities, for almost fifty years. He began employment with A&P as a bagger in 1944, at age sixteen. He soon moved to the position of night stocker, which he performed for eleven years. In 1953, Mudel began working as a meat cutter, and he remained in that position for thirty-nine years, until his last day of work. As a meat cutter, Mudel was required to spend a great deal of time standing, walking, and lifting, in cold temperatures. On April 1, 1992, after working most of a typical shift, Mudel

---

[11] The obvious question avoided by the dissent is as follows: Should we "bow to precedent" where such precedent incorporates a manifestly incorrect interpretation of a statute that is inconsistent with its clear and plain language? The dissent to the contrary, it is the faithful interpretation of the language of a statute, not the reflexive adherence to a conflicting and wrongly decided case law, that promotes "jurisprudential stability." *Robinson, supra.*

[12] The defendant in this case has been variously referred to as Farmer Jack's, Borman's Inc., Great Atlantic & Pacific Tea Company, and A&P. For the sake of clarity, we will refer to this defendant simply as "A&P."

began to feel ill and left work thirty minutes early. When he arrived home, he told his wife that his left leg felt sore. At 2:00 A.M. the following morning, Mudel awoke in severe pain. His wife drove him to the hospital emergency room, where Doctor Dennis Lynch diagnosed Mudel's condition as acute deep vein thrombosis (DVT) of the left leg.[13] Mudel never returned to work.

Mudel applied for worker's compensation benefits on July 28, 1992, alleging disabling injuries to his leg and back. The magistrate concluded that Mudel suffered from an occupational disease and entered an open award of benefits. A&P appealed from the magistrate's decision to the WCAC, arguing that Mudel was not entitled to benefits. Alternatively, A&P argued that the magistrate should have entered a closed award of benefits, on the theory that work activities did not cause, but only temporarily aggravated, Mudel's DVT. Mudel neither appealed nor cross-appealed from the magistrate's favorable ruling. The WCAC, on administrative appeal, determined that the magistrate's findings of fact regarding occupational disease were not supported by competent, material, and substantial evidence on the whole record. However, the WCAC affirmed the magistrate's award of benefits by correcting the statutory basis for that award from an occupational disease compensable under § 401 to a personal injury compensable under § 301.[14] As the WCAC held:

---

[13] Mudel's treating physician described this condition as one which led to the development of blood clots in the patient's veins. Counsel for A&P similarly analogized DVT to a "heart attack in the legs" caused by blood clots and insufficient blood supply in the extremities.

[14] MCL 418.301; MSA 17.237(301).

There was no testimony presented in this matter to suggest that prolonged standing was unique to defendant's business, or that moving from warm to cold temperatures in and out of the freezer, combined with the prolonged standing, was unique to defendant's business. While it is clear that plaintiff suffers from a work-related disability, the finding of an occupational disease is not sustainable. We affirm the decision of the Magistrate with a modification to reflect that plaintiff is disabled pursuant to § 301(4). [1997 Mich ACO 1285, 1287.]

A&P sought leave to appeal from the WCAC's decision to the Court of Appeals, which denied leave to appeal.[15] A&P then applied to this Court for leave to appeal, which we granted.[16]

A&P first argues that the WCAC committed legal error by addressing issues not raised by either party when it corrected the statutory basis for Mudel's wage loss benefits from a § 401 occupational disease to a § 301 personal injury. Specifically, A&P argues that the WCAC violated MCL 418.861a(11);    MSA 17.237(861a)(11), which provides:

The commission or a panel of the commission shall review only those specific findings of fact or conclusions of law that the parties have requested be reviewed.

A&P avers that the only issue properly before the WCAC was the magistrate's award of benefits on the basis of an occupational disease. Once the WCAC determined that Mudel's DVT did not qualify as an occupational disease, A&P contends that the WCAC was required to end its analysis there and terminate

---

[15] *Mudel v Great Atlantic & Pacific Tea Co*, unpublished order of the Court of Appeals, entered February 27, 1998 (Docket No. 204028).

[16] 460 Mich 851 (1999).

Mudel's disability benefits, regardless of whether Mudel's DVT qualified as a compensable personal injury.[17]

On the contrary, our review of the record reveals that Mudel did request the WCAC to review whether he was entitled to benefits for a § 301 personal injury. Mudel filed a brief with the WCAC responding to A&P's appeal, which stated as follows:

> However, even if plaintiff does not have a compensable occupational disease, he does have a compensable personal injury pursuant to MCL 418.301(1); MSA 17.237(301)(1) . . . . Based upon plaintiff's credible testimony, coupled with that of Dr. Lynch, it is clear plaintiff has a work-related disability, be it on the basis of a personal injury or an occupational disease.

We decline A&P's invitation to decide whether MCL 418.861a(11); MSA 17.237(861a)(11) would prevent the WCAC from resolving the issues in this case if Mudel had not raised the alternative grounds in his responsive pleading, because that factual situation is not currently before us.

A&P next contends that the WCAC made impermissible factual findings not supplied by the magistrate, regarding the causal relationship between Mudel's employment and his DVT. Although A&P candidly acknowledges that the WCAC may properly engage in independent factual findings, and affirmatively argues for the reversal of *Layman*, it nevertheless contends

---

[17] A&P conceded at oral argument that the WCAC was presented with the factual basis necessary to resolve Mudel's case. Further, A&P conceded that the grounds for awarding benefits for a personal injury and an occupational disease were not necessarily exclusive. Thus, the magistrate's award of benefits to Mudel under § 401 does not necessarily imply a rejection of his qualification for benefits under § 301.

that the WCAC impermissibly conducted independent fact finding in this case, and seeks reversal on that ground.

As set forth above, the WCAC has statutory authority to make findings of fact independent of those made by the magistrate. Furthermore, the judiciary applies the "any evidence" standard of review to the WCAC's findings of fact. As long as any evidence exists in the record to support the WCAC's determination that Mudel's employment caused his DVT, and the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate, this Court must treat the WCAC's factual finding as conclusive. MCL 418.861a(14); MSA 17.237(861a)(14). On review of this case, we are convinced that the WCAC properly understood and exercised its administrate appellate reviewing function.

Moreover, it is clear that, contrary to the dissent's assertion that *Layman* is not implicated in the present case, the WCAC *did* clearly engage here in independent fact finding. First, the WCAC identified medical testimony that the magistrate ignored—the testimony of Mudel's treating physician that "the precipitating cause [of Mudel's DVT] was his occupation" and that standing in cold temperatures for long periods was "a primary cause [of] his DVT." Second, the WCAC appears to have thoroughly reviewed the expert medical testimony presented below and exercised care in its consideration of this case—it did not simply substitute its judgment for that of the magistrate. Further, it articulated adequate reasons grounded in the record for concluding that Mudel's DVT was caused by his employment. Thus, *Layman*, holding that it is impermissible for the WCAC to make independent factual

findings, is implicated and we have not "reach[ed] beyond the issues presented to overrule precedent." *Post* at 733.

Because we find no clear indication that the WCAC misapprehended its administrative appellate role or that it otherwise exceeded its authority, we defer to its findings, which were supported by record evidence.

A&P argues in the alternative that the WCAC should have awarded Mudel benefits for a closed period because his DVT was only aggravated and not caused by his employment with A&P. The WCAC expressly rejected this argument, stating as follows:

> Defendant next argues that at most, plaintiff experienced an exacerbation of his deep vein thrombosis and should, at most, be entitled only to a closed award of benefits. In making this argument, defendant relies upon the testimony of its examining physician, Dr. Aboulafia. In making this argument, however, defendant ignores the specific testimony of plaintiff's treater, Dr. Lynch, who testified that the deep vein thrombosis did, in fact, damage plaintiff's deep venous system. This is clear evidence of a pathological change which is more than a temporary exacerbation of an underlying condition. Moreover, there is competent, material, and substantial evidence to support the Magistrate's conclusion that the condition remains disabling. [1997 Mich ACO 1287.]

Because the WCAC's factual findings on this issue are supported by record evidence, we must affirm.

Finally, A&P contends that the WCAC committed legal error requiring reversal by failing to apply the significant manner standard of MCL 418.301(2); MSA 17.237(301)(2).[18] However, this argument was never

---

[18] MCL 418.301(2); MSA 17.237(301)(2) provides:

advanced before the magistrate, the WCAC, or the Court of Appeals. Because the issue was not preserved, we decline to address it.

For the reasons set forth above, we conclude in *Mudel* that the WCAC acted within its authority when it affirmed the magistrate's open award of benefits but altered the statutory basis for that award, and we affirm the holding of the WCAC.

## IV. *CONNAWAY v WELDED CONSTRUCTION CO*

In *Connaway*, plaintiff Deborah Connaway worked for defendant Welded Construction Company as a welder's helper. Connaway is an Illinois resident, and Welded Construction is a company engaged in pipeline construction in several states. In 1989, Welded Construction hired Connaway to work on a project in Gould City, Michigan, by placing a telephone call to her union hall in Tulsa, Oklahoma. Connaway traveled to Michigan for the job and on November 2, 1989, her first day of work at the Michigan job site, she fell off a pipe and injured her right knee. She applied for and received Michigan worker's compensation benefits as a result of that injury.

Connaway was treated by Dr. Raymond L. Coss, an orthopedic surgeon, who performed arthroscopic surgery on her right knee in February 1990. After several months of physical rehabilitation, including a "work hardening" program, Coss recommended that Connaway return to work, placing no restrictions on job duties she could perform. Welded Construction

---

Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner.

assigned her to a job site in New York state performing the same tasks as a welder's helper that she performed before her initial injury, and Connaway started working the New York job in August 1990. On September 4, 1990, after she had worked about two weeks on a schedule of ten hours a day and six days a week, she again injured her knee.[19]

After the New York injury, Connaway received worker's compensation benefits in the state of New York, but additionally applied for worker's compensation benefits in Michigan. Addressing the petition for Michigan benefits, the magistrate faced the question whether the New York injury should be characterized as a "recurrence" or an "aggravation" of the Michigan injury. This distinction was critical to the result, under the so-called "Massachusetts-Michigan successive injury rule," which this Court adopted in *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243, 253-254; 262 NW2d 629 (1978), to allocate responsibility for paying worker's compensation benefits where an injured employee has suffered successive injuries. In this case, if the New York injury was a mere recurrence of the Michigan injury, then the successive injury rule would assign responsibility for Connaway's worker's compensation benefits to her Michigan employer. However, if the New York injury aggravated Connaway's original Michigan injury, independently contributing to her present disability, even slightly, then the successive injury rule would assign responsibility for Connaway's worker's compensation benefits to her New York employer. Given that Connaway's

---

[19] For the sake of clarity, we will refer to the November 2, 1989, injury as the "Michigan injury" and the September 4, 1990, injury as the "New York injury."

employer was the same in both states, the rule would effectively determine which state's worker's compensation system applied to Connaway's claim for disability benefits.

The magistrate determined that Connaway's second injury was a mere recurrence of the first, concluded that Michigan law applied, and entered an open award of benefits in her favor. Welded Construction appealed from the magistrate's decision to the WCAC, arguing that Michigan lacked jurisdiction to award benefits to an employee who received a disabling injury in New York, particularly where the employment contract was not entered into in Michigan, defendant was not a Michigan corporation, and plaintiff was not a Michigan resident. The WCAC framed the issue as "whether there is a continuing disability from a Michigan injury or a new and separate injury resulting from the work in New York." 1997 Mich ACO 304.

Applying the "substantial evidence" test, the WCAC determined that the magistrate's factual findings regarding Connaway's continuing disability and a recurrence of her Michigan injury, were not supported by competent, material, and substantial evidence, and therefore reversed the magistrate. Citing expert medical testimony contained in the record, the WCAC determined that the New York injury was truly an aggravation of the Michigan injury, and that the successive injury rule required Connaway to pursue worker's compensation benefits in the state of New York, rather than Michigan. 1997 Mich ACO 304. Connaway sought leave to appeal from the WCAC's decision to the Court of Appeals, which granted leave and

affirmed the WCAC in a published opinion.[20] Connaway then sought leave to appeal to this Court, which we granted.[21]

Connaway's principal argument before this Court is that the magistrate's findings were supported by competent, material, and substantial evidence on the whole record, and that the WCAC erred in ruling otherwise. Connaway relies on the language in *Goff, supra,* 454 Mich 513, which suggests that the courts must begin by reviewing the magistrate's decision, not the WCAC's decision, and must independently determine whether the magistrate's findings are supported by the requisite evidence. As set forth above in part II, this suggestion is incorrect. The courts review the WCAC's decision, not the magistrate's decision, and the judiciary's role is to ensure that the WCAC properly recognized and exercised its administrative appellate function. For these reasons, we reject Connaway's invitation to review the whole record anew and determine whether the magistrate's decision was supported under the "substantial evidence" standard of review.

Connaway next argues that the WCAC's decision is not supported under the "any evidence" standard and that even if the New York injury did aggravate her previous injury, she is entitled to Michigan worker's compensation benefits. We disagree. The "Massachusetts-Michigan successive injury rule," adopted in *Dressler, supra,* was described in *Mullins v Dura Corp,* 46 Mich App 52, 55-56; 207 NW2d 404 (1973),

---

[20] *Connaway, supra,* 233 Mich App 150.

[21] Our order granting leave to appeal directed that this case be argued and submitted to the Court together with *Mudel.* 461 Mich 870 (1999).

quoting 3 Larson, Workmen's Compensation, § 95.12, pp 508.130-508.133, as follows:

> "The Massachusetts-Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.
>
> *"If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. . . .*
>
> "On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition." [Emphasis in original.]

The dissent would reverse the WCAC's decision on the "legal basis" that it violated the "legislative command" of MCL 418.861a(3); MSA 17.237(861a)(3), by "fail[ing] to give the appropriate deference to the properly supported factual findings of the magistrate." *Post* at 744, n 8. However, the dissent ignores the WCAC's authority, provided by MCL 418.861a(14); MSA 17.237(861a)(14), to conduct a "qualitative and quantitative" analysis of the "whole record" in determining whether the magistrate's factual findings are supported by competent, material, and substantial evidence. Thus, the WCAC cannot be accused of "violat[ing] . . . legislative command" when it attaches more or different weight or credibility to the evidence than that given by the magistrate.

Contrary to the dissent's assertion that *Layman* is not implicated by the issues presented here, the WCAC *did* make independent findings of fact. Although the WCAC noted that Connaway clearly suffered a work-related injury in November 1989, causing a work-related disability, the record supports its factual finding that this disability "had resolved itself" before Connaway's New York injury; she was released to return to work without restrictions in August 1990 and was again working as a welder's helper when she incurred the New York injury. Moreover, the record supports the WCAC's determination that Connaway's New York injury was neither a mere recurrence nor a *temporary* aggravation of her Michigan injury: (1) the plaintiff's physical condition following the New York injury was "subjectively different" than her physical condition before such injury, (2) the plaintiff experienced pain following the New York injury that she had not felt before such injury, (3) following the New York injury, the plaintiff was incapable of engaging in activities that she was capable of performing before such injury, (4) following the New York injury, the plaintiff's treating physician restricted her from participating in any "heavy industry," and (5) an examining physician opined, more than two years following the New York injury, that the plaintiff was incapable of engaging in any prolonged climbing, kneeling, and squatting, and that she would experience difficulty performing any prolonged standing or walking. Further, the WCAC observed that, six years following the New York injury, Connaway had yet to return to work.

The record demonstrates that the New York injury did not simply elevate temporarily the severity of the

plaintiff's pre-New York injury physical condition, thus allowing her subsequent return to that condition. Rather, the evidence illustrates that the plaintiff's *current* inability to engage in work activity is significantly impacted by the New York injury, an event that occurred almost ten years ago (as opposed to the nine-month period of disability following the Michigan injury). If the New York injury was simply a recurrence of the Michigan injury, or merely temporary in nature, logic would suggest that the plaintiff's ability to return to work would have been restored to the status quo ante once the effects of that injury ameliorated. However, the evidence demonstrates that the New York injury resulted in an "independent contribution," permanent in effect, to the plaintiff's "final condition" (her current disability).

Under the "any evidence" standard of judicial review, Connaway's New York injury independently contributed, with permanent effect, to the causation of her current disability. Thus, the successive injury rule compels the conclusion that Michigan's worker's compensation benefits are not available for Connaway's current disability. Because the New York injury independently contributed to the causation of her current disabled condition, she must pursue the worker's compensation benefits available to her in New York, where the independent contributing injury occurred.

Because the WCAC's determination was supported by record evidence, we must treat its factual findings as conclusive. That this Court might come to a different conclusion, as the dissent would do,[22] than the WCAC,

---

[22] The dissent engages in a lengthy factual review of this case and determines that "the WCAC exceeded its reviewing power in overturning

if reviewing on a de novo basis, or that it might determine that the magistrate's decision is better supported than the WCAC's, does not mandate reversal of the WCAC; rather, our limited review function under the law, in contrast to that of the WCAC, is not to weigh or balance the evidence, but merely to determine whether "any evidence" exists in support of the WCAC's decision.

Furthermore, we do not believe that the WCAC misapprehended its administrative appellate role in reviewing the magistrate's decision. First, the WCAC identified medical testimony that the magistrate ignored. Second, the WCAC exercised care in its consideration of this case, and did not simply substitute its judgment for that of the magistrate. The WCAC obviously considered the expert medical testimony at great length, quoting extensively from the record in explaining which testimony the magistrate had ignored. Further, the WCAC articulated adequate reasons grounded in the record for concluding that Connaway's New York injury aggravated her knee condition. Because we find no clear indication that the WCAC misapprehended its administrative appellate role or that it otherwise exceeded its authority, we defer to its findings, which were supported by record evidence.

For the reasons set forth above, we conclude in *Connaway* that the WCAC acted within its authority when it reversed the magistrate's award of wage loss

---

[the magistrate's decision]." *Post* at 747. However, contrary to the straightforward statutory language relating to *judicial* review of the WCAC, the dissent uses the wrong standard, "substantial evidence," in reviewing the wrong entity, the magistrate.

benefits for an injury that occurred in New York, and we affirm the holding of the WCAC.

## V. THE DISSENT

The dissent denigrates our analyses in these cases and accuses us of "needlessly reach[ing] beyond the issues presented to overrule precedent." *Post* at 733. We have attempted, in a highly difficult area of the law, to apply as faithfully as possible the policy decisions reached by the Legislature—policy decisions reflected in the express language of its statutes. In contrast, the dissent departs from the language of these statutes, and appears to be unencumbered by the need to explain or justify such departures.

### 1. THE DISSENT ASSERTS THAT *GOFF* MUST BE AFFIRMED.

The dissent fails to reconcile *Goff* with the policy decisions of the Legislature by failing to give any meaning to the following statutory language:

> The findings of fact made by the [WCAC] . . . in the absence of fraud, shall be conclusive. [MCL 418.861a(14); MSA 17.237(861a)(14).]

The rule in *Goff*, that the judiciary must first examine the magistrate's decision in determining whether the "substantial evidence" standard was met, manifestly conflicts with this statutory language. With regard to judicial appellate review, the WCAC's factual findings are to be considered conclusive. Thus, judicial engagement in determining whether the *magistrate's* findings of fact are supported by "substantial evidence" violates the "any evidence" standard of review to be applied by the judiciary and exceeds the Legislature's intended appellate review by looking beyond the conclusive factual findings of the WCAC.

Rather than engaging in the "extraordinary act of overruling *Goff*," as we are accused of doing by the dissent, *post* at 734, we have simply recognized that *Goff* is logically inconsistent with *Holden*. The two cases cannot stand simultaneously, for their interpretations are different. To the extent that *Goff* is the better-decided case, then *Holden* cannot stand; to the extent that *Holden* is the better-decided case, *Goff* cannot stand. Thus, the failure to overrule one or the other would result in the perpetuation of confusing and conflicting outcomes in this important area of the law, one in which both employees and employers have an interest in a clear and predictable rule of law.

### 2. THE DISSENT ASSERTS THAT THE WRONG STANDARD OF APPELLATE REVIEW MUST BE APPLIED.

Contrary to the statutorily required WCAC "substantial evidence" standard of review, *Goff* directs the WCAC to apply the "any evidence" standard when reviewing the magistrate's decision

> [i]f the magistrate's decision is reasonably supported in the record by *any* competent, material, and substantial evidence . . . . [*Id.* at 538.]

The word "any" is nowhere to be found in MCL 418.861a(3); MSA 17.237(861a)(3); to insert this word subverts the intent of the Legislature as demonstrated by clear and plain statutory language.

### 3. THE DISSENT ASSERTS THAT *LAYMAN* MUST BE AFFIRMED.

The dissent fails to reconcile *Layman* with the policy decisions of the Legislature by ignoring or failing

to give any meaning to the following statutory language:

> The findings of fact made by the commission . . . in the absence of fraud, shall be conclusive. [MCL 418.861a(14); MSA 17.237(861a)(14).]

The rule in *Layman,* that the WCAC is prohibited from making independent factual findings, manifestly contradicts the clear and plain statutory language of § 861a.

### VI. CONCLUSION

The Legislature has created two very distinct standards of review for worker's compensation cases. The "substantial evidence" standard governs the WCAC's review of the magistrate's findings of fact, while the "any evidence" standard governs the judiciary's review of the WCAC's findings of fact. The WCAC enjoys statutory authority to make independent findings of fact, regarding issues that have been addressed or overlooked by the magistrate, as long as the record is sufficient for administrative review and does not prevent the WCAC from reasonably exercising its reviewing function without resort to speculation. The role of the WCAC is to ensure that the factual findings in worker's compensation cases are supported by the requisite evidence. The role of the judiciary is to ensure that the WCAC properly recognized and exercised its administrative appellate role.

We expressly reaffirm our decision in *Holden, supra,* and we overrule *Goff, supra,* in that it contradicted our decision in *Holden.* Furthermore, we overrule *Layman, supra,* to the extent that it clearly mis-

stated the law with regard to the WCAC's authority to make independent factual findings.

WEAVER, C.J., and TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with MARKMAN, J.

APPENDIX

WCAC REVIEW OF THE MAGISTRATE

The WCAC treats the magistrate's findings of fact as conclusive "if supported by competent, material, and substantial evidence on the whole record." MCL 418.861a(3); MSA 17.237(861a)(3).

"[S]ubstantial evidence" means "such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion." MCL 418.861a(3); MSA 17.237(861a)(3).

The "whole record" means "the entire record of the hearing including all of the evidence in favor and all the evidence against a certain determination." MCL 418.861a(4); MSA 17.237(861a)(4).

The WCAC's review "shall include both a qualitative and quantitative analysis of that evidence in order to ensure a full, thorough, and fair review." MCL 418.861a(13); MSA 17.237(861a)(13).

The WCAC has authority to make independent findings of fact, and is not required to remand a case to the magistrate where factual findings necessary to the decision are lacking, as long as the record is sufficient for administrative appellate review and the WCAC is not forced to speculate. MCL 418.861a(14); MSA 17.237(861a)(14).

JUDICIAL REVIEW OF THE WCAC

The judiciary treats the WCAC's findings of fact, made within the WCAC's powers, as conclusive absent fraud. If there is *any* evidence supporting the WCAC's factual findings, the judiciary must treat those findings as conclusive. MCL 418.861a(14); MSA 17.237(861a)(14).

The judiciary reviews the WCAC's decision, not the magistrate's decision. MCL 418.861a(14); MSA 17.237(861a)(14).

The judicial tendency should be to deny leave to appeal from decisions of the WCAC or, if leave is granted, to affirm, in recognition of the WCAC's expertise in this extremely technical area of law. *Holden v Ford Motor Co*, 439 Mich 257, 269; 484 NW2d 227 (1992).

The judiciary exercises a very narrow scope of review over the WCAC's decisions, designed to ensure that the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate. *Id.*

The judiciary continues to review questions of law involved in any final order of the WCAC under a de novo standard of review. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000).

Kelly, J. (*concurring in part and dissenting in part*). I agree with the result the majority reaches in *Mudel*.

I dissent from the majority's decision in *Connaway* and would reverse the holdings of both the Court of Appeals and the Worker's Compensation Appellate Commission in that case. The WCAC exceeded its authority, reversing the decision of the magistrate that was based on competent, material and substantial evidence on the entire record. MCL 418.861a(3); MSA 17.237(861a)(3), MCL 418.861a(14); MSA 17.237(861a)(14), *Holden v Ford Motor Co*, 439 Mich 257, 269; 484 NW2d 227 (1992).

I write, also, to register my strong disagreement with the majority's decision to revisit the settled standards of review in worker's compensation cases. In recent years, this Court has been careful to craft workable standards of appellate review. *Holden*, *Goff*,[1] and *Layman*[2] are consistent with the Worker's Disability Compensation Act[3] and with each other and do not cause the confusion the majority asserts. It is the majority's decision in this case that will cause confusion. It will alter the law, expressly overruling *Layman* and *Goff*, decisions that are only two and three years old, respectively.

## I. GOFF

Today, the majority needlessly reaches beyond the issues presented to overrule precedent. The time-

---

[1] *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507; 563 NW2d 214 (1997).

[2] *Layman v Newkirk Electric Associates, Inc*, 458 Mich 494; 581 NW2d 244 (1998).

[3] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

honored doctrine of stare decisis strongly encourages courts to adhere to their precedents. A prior decision should be overruled only once a court is convinced that it was both wrongly decided and that less harm will result from overruling than from following it. *People v Graves*, 458 Mich 476, 480-481; 581 NW2d 229 (1998). In my view, the majority has failed to establish either prong of the *Graves* test and, thus, has failed to justify the extraordinary act of overruling *Goff*. I do not think that *Goff* and *Holden* can be read as inconsistent with one another.

*Holden* states that, in reviewing WCAC decisions, courts are to ensure that the WCAC "did not 'misapprehend or grossly misapply' the substantial evidence standard." If the WCAC did not misapprehend its administrative appellate role in reviewing the decision of the magistrate, it should be affirmed. *Holden*, *supra* at 269; MCL 418.861a(14); MSA 17.237(861a)(14).

*Goff* states:

> [W]here a party claims that the WCAC has exceeded its power by reversing the magistrate, meaningful review must begin with the magistrate's decision, because if competent, material, and substantial evidence based on the whole record supports the magistrate's decision, the WCAC need go no further. If it does, the WCAC is exceeding its authority. [*Id.* at 513.]

> If the magistrate's decision is reasonably supported in the record by *any* competent, material, and substantial evidence, then it is conclusive and the WCAC must affirm. If it does not, it is exceeding the scope of its reviewing power and impermissibly substituting its judgment for the magistrate's. [*Id.* at 538 (emphasis added).]

The majority claims that this language fuses the "substantial evidence" standard, whereby the WCAC reviews the magistrate's decision, and the "any evidence" standard, whereby appellate courts review the WCAC's decision. I disagree.

If a magistrate's finding of fact is supported by "any" competent, material, and substantial record evidence, then it is supported by competent, material, and substantial evidence on the whole record. The standard of review stated in *Goff* is the same as in *Holden*. The mere use of the word "any" does not have the effect of fusing or confusing the "substantial evidence" standard with the "any evidence" standard. Not to put too fine a point on it, "any competent, material, and substantial evidence" is not equivalent to "any evidence."

While appellate courts review the WCAC's findings of fact under the "any evidence" standard, they are also directed to determine whether the WCAC misapprehended its administrative appellate role in reviewing magistrates' decisions. Whether the WCAC was acting within its powers of review is a question of law. MCL 418.861a(14); MSA 17.237(861a)(14); *Holden, supra* at 269. The Court of Appeals and Supreme Court review questions of law de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

When it is claimed that the WCAC substituted its own findings, we determine whether the WCAC exceeded its administrative appellate authority by examining the findings of fact of the magistrate. When the latter are plausibly supported by any competent, material, and substantial evidence in the

record, the WCAC should be reversed and the magistrate's factual findings should be reinstated. To hold otherwise would leave appellate courts powerless to ensure that the WCAC acts within its legislatively defined parameters.

> [I]t is quite possible that a reasonably minded magistrate could interpret a record differently than a reasonably minded WCAC. However, if the magistrate's conclusion is derived from competent, material, and substantial evidence, then the WCAC may not substitute its judgment for that of the magistrate notwithstanding either the reasonableness or the adequacy of the commission's conclusion. [*Goff, supra* at 514; MCL 418.861a(3); MSA 17.237(861a)(3).]

The majority notes:

> [C]ourts simply cannot review the record in every worker's compensation case in the detail required to make conclusions about the sufficiency of the magistrate's decision. Worker's compensation cases are typically fact intensive, involving lengthy deposition testimony and medical documentation. If the courts were to attempt a review of each and every worker's compensation case with an eye toward making detailed factual conclusions, dockets would become impossibly burdened with worker's compensation cases, further delaying the resolution of injured workers' claims for benefits. [*Ante,* p 702, n 5.]

However, where the WCAC makes factual findings that conflict with those of the magistrate, a reviewing court is compelled to examine the findings of the magistrate. How else can it determine whether the WCAC misapprehended its administrative appellate role? As a practical matter, this occurs in the course of ascertaining whether the opinion of the WCAC is supported by "any evidence."

"In reviewing the magistrate's decision, the WCAC must do so with sensitivity and deference toward the findings and conclusions of the magistrate in its assessment of the record. . . . Ultimately, the role of the Court of Appeals and [the Supreme] Court is only to evaluate whether the WCAC exceeded its authority." [*Layman, supra* at 507, quoting *Goff, supra* at 538.]

While there are constitutional and statutory restrictions on judicial review of the WCAC, they pertain to factual conclusions. Const 1963, art 6, § 28, MCL 418.861a(14); MSA 17.237(861a)(14). And the WCAC's factual conclusions are insulated only if made in the course of a proper exercise of the WCAC's review function.

Under the guise of clarifying the standards of review, the majority has, in fact, eliminated meaningful appellate court oversight of the operation of the WCAC. Today's decision essentially restores to the WCAC de novo review of magistrates' decisions, something the Legislature sought to eliminate in 1985. 1985 PA 103. It removes the ability of appellate courts to examine a magistrate's decision to determine whether the WCAC exceeded its appellate role. And it leaves no means by which to compel the WCAC's compliance with the "substantial evidence" standard that the WDCA directs the WCAC to employ.

The majority acknowledges that an inherent tension exists between the language of subsections 861a(3) and (14). It acknowledges that appellate courts experience difficulties applying the "any evidence" standard to WCAC findings of fact while also ensuring that the WCAC has acted within its powers when reviewing magistrates' decisions. *Holden, supra* at 263, 269. The majority, in "clarifying and defini-

tively setting forth the proper standards of administrative and judicial review," admittedly fails to resolve this tension. (*Ante*, pp 696; 695, n 1 and 704, n 6.) Judicial review of the WCAC is still a tightrope walk in most cases. Thus, the majority seems to have accomplished nothing useful here, only to have upset the settled state of the law.

## II. *LAYMAN*

*Layman*'s holding need not be addressed in deciding these cases. In reversing *Layman* today, the majority has ignored the basic doctrine of ripeness.[4] *Layman* held that, where findings of fact necessary to support a legal conclusion are incomplete, the WCAC must remand to the magistrate for the requisite fact finding. *Id.* at 509. Neither *Mudel* nor *Connaway* implicates *Layman* or requires the Court to reach the question whether it was wrongly decided.

### A. *MUDEL* DOES NOT PRESENT
### ISSUES IMPLICATING *LAYMAN*

In *Mudel*, the issue is whether the WCAC erroneously changed the statutory basis for the magistrate's award of benefits from a § 401 occupational disease to a § 301 personal injury.

The magistrate and the WCAC agree that plaintiff suffered from a work-related disabling condition, entitling him to an open award of benefits. The magis-

---

[4] The "ripeness doctrine" requires courts to refrain from adjudicating issues not actually presented by the case or controversy. The doctrine counsels that courts not adjudicate an issue that is only hypothetical or speculative. Black's Law Dictionary (6th ed), p 1328.

trate found the disabling condition to be an occupational disease, and the WCAC found it to be a personal injury. The differing legal conclusions are based on the same facts. The majority concludes: "[T]he magistrate's award of benefits to Mudel under § 401 does not necessarily imply a rejection of his qualification for benefits under § 301." *Ante*, p 717, n 17.

When the magistrate found that plaintiff's deep vein thrombosis was a work-related disease, he necessarily first found that the condition was a personal injury. When the WCAC reversed the magistrate's finding that plaintiff's disability was caused by a work-related disease, it then had to determine whether plaintiff had a compensable personal injury. This is a broader category, one that includes work-related diseases in its definition. The issue is not one of fact that the magistrate failed to address. Rather, it is a legal issue that the magistrate necessarily addressed before reaching his more specific conclusion that plaintiff had an occupational disease.

No new factual findings were required to make this legal determination.[5] The WCAC noted:

> There was no testimony presented in this matter to suggest that prolonged standing was unique to defendant's business, or that moving from warm to cold temperatures in and out of the freezer, combined with the prolonged stand-

---

[5] The majority ignores the "clear and plain meaning" of this sentence when it notes that, to the contrary, "the WCAC *did* clearly engage here in independent fact finding." *Ante*, p 718 (emphasis in original). As previously stated, *Layman* held that, where findings of fact necessary to support a legal conclusion are incomplete, the WCAC must remand to the magistrate for the requisite fact finding. *Id.* at 509. Because additional findings of fact were not necessary to support the legal conclusion reached by the WCAC, *Layman* is not implicated.

ing, was unique to defendant's business. [1997 Mich ACO
1285, 1287.]

Thus, there was no factual support for the magistrate's legal conclusion that the work-related disabling condition plaintiff suffered from was compensable as a § 401 occupational disease. The magistrate made no findings of fact to support the conclusion, because there was no competent, material, and substantial evidence on which to base it. In short, *Layman* is not implicated.

### B. *CONNAWAY* DOES NOT PRESENT ISSUES IMPLICATING *LAYMAN*

In *Connaway*, the WCAC exceeded its review function under the substantial evidence standard. It substituted its judgment for that of the magistrate by disregarding factual findings that were supported by competent, material, and substantial evidence.

No remand to the magistrate for additional findings of fact is necessary in *Connaway*. The record is sufficiently complete that this Court can simply reverse the decisions of the WCAC and the Court of Appeals and reinstate the findings and holding of the magistrate. *Connaway* offers no excuse to overrule *Layman*.

### C. THE *LAYMAN* DECISION IS SOUND

The WCAC must first determine if there is competent, material, and substantial evidence on the whole record to support the magistrate's findings. If there is, the WCAC's review ends, and the magistrate must be affirmed. MCL 418.861a(3); MSA 17.237(861a)(3); *Holden, supra* at 269; *Goff, supra* at 513. However, if

the factual findings lack the specificity to reveal the magistrate's winding path through evidence subject to multiple interpretations, the WCAC must remand the matter for additional findings. *Layman, supra* at 508-509; *Woody v Cello-Foil Products (After Remand)*, 450 Mich 588, 594-595; 546 NW2d 226 (1996).

Before the 1985 legislative amendment of the WDCA, the Worker's Compensation Appeal Board reviewed magistrates' factual findings de novo. Since then, its successor's role has been confined to reviewing for error.

In making factual findings, a magistrate necessarily decides what evidence from an often voluminous record to believe and what to discount. That is the magistrate's prerogative as the primary finder of fact.[6] The WCAC cannot properly review a magistrate's findings of fact unless they

---

[6] A primary purpose of [the Legislature's 1985 amendment of the WDCA] is to make the decisions of the magistrates final in most cases. While an appeal can be filed, it is intended that relatively few appeals will be successful. The number of members of the workers' compensation appellate tribunal has been reduced because the appellate role has been reduced from factfinder to a limited review for error. The decision of the magistrates will in most cases constitute the final decision. . . .

A magistrate, in hearing a workers' compensation claim, will have the same role as a judge when the judge acts as trier of fact in an action brought to enforce a right created by statute. A magistrate, like a judge, will find the facts with a large measure of finality and apply the law to the facts, and in so doing will often find it necessary to construe the workers' compensation act. . . . The findings of fact of a circuit judge are subject to reversal if clearly erroneous (when the Court of Appeals or this Court is left with the definite and firm conviction that a mistake was made), while a magistrate's findings of fact can be reversed on appeal only if there is not substantial evidence on the whole record to support the decision. [*Civil Service Comm v Dep't of Labor*, 424 Mich 571, 621-622; 384 NW2d 728 (1986).]

"are sufficiently detailed so that [the commission] can separate the facts . . . found from the law . . . applied, and [determine] that conclusory findings are inadequate because [the commission] need[s] to know the path [the magistrate] has taken through the conflicting evidence, the testimony it has adopted, the standards followed and the reasoning used to reach [the] conclusion." [*Woody, supra* at 594.]

" 'The findings of fact must include as much of the subsidiary facts as is necessary to disclose the steps by which the factfinder reached its ultimate conclusion on each factual issue. The findings should be made at a level of specificity which will disclose to the reviewing body the choices made as between competing factual premises at the critical point that controls the ultimate conclusion of fact.' " [*Id.* at 595 (brackets omitted).]

Courts cannot adequately determine whether the WCAC exceeded the scope of its reviewing power and impermissibly substituted its judgment for the magistrate's if the factual findings are incomplete.

The majority states *Woody* "stands for the limited proposition that the WCAC cannot review a decision by a magistrate, if the magistrate's opinion is insufficiently detailed to allow the reviewing body to separate findings of fact from legal determinations." *Ante,* pp 711-712. In such a case, "the WCAC [is] forced to speculate regarding the facts and the legal reasoning relied upon." *Id.,* p 712. Compelling the WCAC to remand even in these limited circumstances conflicts with the majority's reading of the "clear and plain" language of the statute:

The commission or a panel of the commission may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined

that the record is insufficient for purposes of review. [MCL 418.861a(12); MSA 17.237(861a)(12).]

Thus, to be consistent, the majority would have to overrule *Woody* as well. A second-hand evaluation by the WCAC of the magistrate's factual determinations in most cases will occasion speculation. For that reason, it is preferable for the WCAC to avoid independent fact finding and, where factual ambiguities exist, remand to the magistrate.

It should remand, also, when it concludes that the magistrate missed evidence, rather than made a conscious decision not to consider it because it was unpersuasive or lacked credibility. The commission should remand, rather than make its own findings of fact, given that the appellate courts may need to review the case.

Even if the standards that are in place for appellate court review of WCAC and magistrates' decisions were confusing, I question whether the majority opinion does anything to alleviate confusion. See *ante*, pp 702, n 5; 695, n 1; 704, n 6. The majority should leave settled precedent undisturbed, unless it can show that less injury will result from overruling case law than from following it. *Graves, supra* at 481.

The majority claims *Layman* has caused delays, relying on the conclusory statements of a party, defendant Great Atlantic and Pacific Tea Company:

> *Layman*'s requirement of "[r]emand for factual determination of an overlooked point slows the administrative process to a virtual standstill." [*Ante*, p 713, n 10.]

However, neither A&P nor the majority has brought forward any objective data to bolster this assertion.

Moreover, assuming there are delays, they are more than offset by the ultimate accomplishment of more accurate, hence fair, resolution of worker's compensation cases.[7]

The WDCA requires appellate courts to review the commission's findings of fact under the "any evidence" standard. Case law requires appellate courts to review the commission's assessment of the magistrates' findings de novo, asking whether there was "substantial evidence" for the findings. *Layman, supra* at 507; *Goff, supra* at 513-514; MCL 418.861a(14); MSA 17.237(861a)(14); *Cardinal Mooney High School, supra* at 80. The Legislature has the prerogative to alter our settled case law's resolution of the standards.[8] See *ante,* pp 698-699. It is in the interest of jurisprudential stability that this Court bow to precedent and abide by its earlier resolution of the standards. To alter them now is to feed the apprehension that the standards change with the makeup of the Court.

---

[7] The majority does not claim that the decisions that appellate courts make involving the WDCA are biased to reflect the result favored by a particular court. Thus, I find confusing and contradictory the majority's statement that, under the settled standards of review and *Layman*'s dictate that findings of fact should be made by the magistrate, "decisions of the appellate courts are resultantly more arbitrary and less predictable . . . ." *Ante,* p 694.

[8] The majority repeatedly claims that this dissent fails to treat the WCAC's factual findings as conclusive on appellate review, in derogation of the statutory language. I reiterate that the Legislature also provided that "findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record." MCL 418.861a(3); MSA 17.237(861a)(3). The *legal* basis on which I would reverse the WCAC's decision in *Connaway* is that it violated this legislative command. It failed to give the appropriate deference to the properly supported factual findings of the magistrate.

### III. THE WCAC EXCEEDED ITS REVIEWING
### AUTHORITY IN *CONNAWAY*

Competent, material, and substantial evidence supports the magistrate's conclusion that the plaintiff never completely recovered from the November 2, 1989, injury. It also supports his conclusion that the September 4, 1990, incident was a mere recurrence of and did not contribute independently to her disability. The WCAC erred in not giving these findings due deference.

Plaintiff's testimony supports the magistrate's conclusions. She testified that she experienced soreness and swelling in her right knee throughout her work-hardening program. She had to "ice" her knee to control these problems. Between the time that Ms. Connaway stopped work hardening at the end of July 1990 and August 16, 1990, when she resumed work "on a trial basis," she felt her knee "decreasing again, getting weaker." She continued to ice the knee in order to control soreness and swelling.

When she reinjured her knee, plaintiff testified that she felt "hot pain . . . kind of like what I felt before," but that she did not experience the massive swelling that occurred after the Michigan injury. The day after she returned from the hospital, she called Christine Johnson at Hartford Insurance in Grand Rapids, Michigan, from whom she had previously received worker's compensation. She did this because she "just figured it was the, still the same accident, I hadn't fully recovered, so I called her, 'Well, Christine, what do I have to do? My knee didn't hold up . . . .'" Plaintiff testified that her current symptoms are the same as the symptoms she had between the 1989

Michigan injury and her return to work in August of 1990.

The magistrate found the plaintiff's testimony credible. The testimony supports the magistrate's conclusion that plaintiff should not have returned to work in mid-August on a trial basis, because she had not recovered from her disability. Likewise, it supports the magistrate's finding that the reinjury did not independently contribute to plaintiff's disability. The fact that she has not returned to work since reinjuring her knee does not indicate that the second injury contributed independently to her disability. It may be that plaintiff never would have recovered from her initial disability to an extent that she could return to work.

The medical facts, established by all three experts, indicate that the New York incident was simply a reinjury and did not add to her established disability. In his deposition testimony, Dr. Coss stated that, by August 8, 1990, he felt that plaintiff had "achieved maximum benefit from the work hardening and [he] suggested a trial of work." He was tentative, but nonetheless permitted a work trial with the understanding that Ms. Connaway "would have some increased percentage chance of reinjury or intolerance to the work demands."

When he saw plaintiff on September 13, 1990, after the second injury, he "felt she had resprained the knee." On October 18, 1990, Dr. Coss indicated that Ms. Connaway's knee was more stable than he had ever seen previously. While he continued her restriction of nonparticipation in heavy industry, it was because she had failed her trial return to work. He was unable to find any objective evidence that the

New York incident caused any further harm to her knee. The magistrate found Dr. Coss' testimony to be credible.

In Dr. Cisek's deposition testimony, he stated:

> I did not feel that there was any . . . permanency associated with the accident of 9/4/90, I felt that that particular accident represented an aggravation of her preexisting condition . . . .

Dr. Cisek went on to say that the New York event would result in only temporary aggravation of her preexisting condition. The magistrate found that Dr. Cisek gave credible testimony.

Finally, Dr. Korhonen testified that plaintiff had a laterally tracking patella, a congenital anomaly, which caused plaintiff's chondromalacia. He did not indicate that any damage was caused to plaintiff's anterior cruciate ligament as a result of the September 1990 injury. The magistrate did not comment regarding the credibility of Dr. Korhonen's testimony.

Because the magistrate's decision is supported by competent, material, and substantial evidence, it is manifest that the WCAC exceeded its reviewing power in overturning it.

> "[W]here the primary compensable injury arises out of and in the course of employment[,] compensability may be extended to a subsequent injury or aggravation of the primary injury where it has been established that the subsequent injury or aggravation is the direct and natural result of the primary injury and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation." [*Feldbauer v Cooney Engineering Co (On Remand)*, 205 Mich App 284, 288; 517

NW2d 298 (1994), quoting *Schaefer v Williamston Community Schools*, 117 Mich App 26, 37; 323 NW2d 577 (1982).]

Assuming arguendo that the record supports a finding that the September 1990 injury aggravated the primary injury, plaintiff's conduct did not act as an independent intervening cause of the aggravation. The second injury was a natural result of the first. Thus, compensability is properly based on the primary injury.

In its reversal of the magistrate's decision, the WCAC attached great significance to the fact that Dr. Cisek termed the September 1990 incident an "aggravation" of plaintiff's prior condition. It found significant, also, that Dr. Coss noted subjective differences between plaintiff's condition before and after the New York injury. 1997 Mich ACO 304.

The majority, likewise, relies on these details to find that the WCAC's findings of fact are supported by "any evidence." *Ante*, pp 726-727. The WCAC and the majority both have failed to consider this fact: plaintiff's deterioration after the second injury is equally consistent with her testimony that her knee continuously deteriorated after she stopped work hardening, and that the second injury contributed independently to her disability. Furthermore, the fact that Dr. Cisek described plaintiff's September 1990 incident as "an aggravation" is hardly probative of whether the incident contributed to the causation of the disability condition.

The successive injury rule states that a second injury is considered a mere recurrence of the first where "a man has suffered a back strain, followed by a period of work with continuing symptoms indicat-

ing that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion." *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243, 253; 262 NW2d 629 (1978). In such a case, the carrier responsible for providing coverage for the first injury remains liable for the second. An examining medical expert could well describe the second injury as an aggravation of the first without precluding the first carrier's liability.

The example of the man with the strained back is wholly analogous to the situation in this case. On the basis of the plaintiff's testimony and that of the three medical experts, the magistrate was entirely justified in making the factual findings that (1) the September 1990 injury did not contribute to the underlying disability, and (2) plaintiff continued to be disabled when she was working for Welded Construction Company from August 16, 1990, until her second injury on September 4, 1990.

The WCAC reinterpreted the evidence and substituted its judgment for that of the magistrate, whereas the magistrate's findings of fact were based on competent, material, and substantial evidence. This Court should reverse the WCAC under the holdings of *Holden* and *Goff.* Consequently, the Court need not reach *Layman* to decide *Connaway.* The majority has overreached the actual, pertinent issues in these cases in order to overrule a case not implicated by the issues presented.

### IV. CONCLUSION

I dissent from the majority opinion, because it needlessly reaches out to overrule *Goff. Goff* is con-

sistent with *Holden* and, therefore, should be left intact.

I dissent, also, because the majority overrules *Layman*, although these two cases do not present issues that implicate its holding. Furthermore, the *Layman* holding is not erroneous. The majority's unnecessary change in worker's compensation law will create, rather than resolve, confusion in the state's jurisprudence.

Finally, I dissent because the majority errs in affirming the Court of Appeals and WCAC decisions in *Connaway*. The WCAC misapprehended its administrative appellate role in reviewing the magistrate's decision. It erred as a matter of law in substituting its own findings of fact for those of the magistrate. The magistrate's findings were based on competent, material, and substantial evidence on the whole record.

CAVANAGH, J., concurred with KELLY, J.